[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-8482

_____

D. C. Docket No. 93-CV-22

ALBERT G. THOMAS,

Plaintiff-Appellant,

versus

BOBBY R. WHITWORTH;
LANSON NEWSOME; ALLEN L.
AULT; TONY TURPIN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 5, 1998)**

Before TJOFLAT, BIRCH and MARCUS*, Circuit Judges.

_____

*Honorable Stanley Marcus was a U.S. District Judge of the Southern District of Florida sitting by designation as a member of this panel when this appeal was argued and taken under submission. On November 24, 1997 he took the oath of office as a United States Circuit Judge of the Eleventh Circuit.

MARCUS, Circuit Judge:

Plaintiff-Appellant Albert Thomas filed this lawsuit seeking damages and injunctive relief for alleged civil rights violations and other allegedly unlawful acts by the Defendant-Appellees. After the completion of discovery, the case was set for jury trial before the presiding district court judge. Over Thomas's objection, a United States Magistrate Judge supervised the jury selection process and selected a panel of jurors to hear the case. That jury eventually returned a verdict in favor of the Defendants. In this appeal, Thomas argues that a magistrate judge cannot preside over the jury selection process in a civil action where one of the parties has indicated his objection to this practice and unequivocally stated his desire to have the entire lawsuit tried before a district judge. Thomas also suggests that, under these circumstances, a new trial must be provided, since his inability to pinpoint any tangible prejudice flowing from the magistrate judge's supervision of voir dire does not make the error harmless. For the reasons stated below, we agree that a new trial is warranted.

I.

Thomas is a prisoner in a Georgia state penitentiary. On June 29, 1992, he filed a 38-page pro se complaint against Appellees Whitworth, Newsome and Thomas, officials in the Georgia prison system, seeking relief under 42 U.S.C. §1983 and other provisions for a series of alleged civil rights violations relating to his confinement. Appellee Ault was subsequently added as an additional Defendant. When the case was trial-ready, the district court, on January 26, 1996, directed Thomas to indicate, no later than February 5, 1996, whether he consented to trying the case before a magistrate judge. On February 2, 1996, Thomas advised the district

2

court that he did not consent to a magistrate judge trial. Nevertheless, on February 22, 1996, the case was called for jury selection by the appointed magistrate judge, in accordance with the district judge's wishes.[1] Before the selection process got underway, Thomas reiterated his objection during a sidebar colloquy with the magistrate judge:

> MAGISTRATE: You know you've got a right to have your case heard by a District Court Judge, and have a District Court Judge try your case?
>
> THOMAS: Yes, sir.
>
> MAGISTRATE: You've also got a right to have a District Court Judge preside over jury selection in your case. . . . Now, you've got a right to have him preside over everything, including jury selection . . . [I]f you have any objection to me presiding over the jury selection, then we will not select the jury on this case today, and Judge Moore will have to schedule the trial at a later time when he can come and have a jury selected and try the case then.
>
> THOMAS: I'd like for Judge Moore to handle the whole proceeding.
>
> MAGISTRATE: You want him to handle the whole proceeding?
>
> THOMAS: Yes, sir.
>
> MAGISTRATE: So you do not agree for me to preside over the jury selection?
>
> THOMAS: No, sir.

At the conclusion of this sidebar conversation, the magistrate judge supervised the jury selection process in several other lawsuits. Disregarding Thomas's objection, he then proceeded with jury selection in the case at bar. The magistrate judge approved

---

[1]It appears from the record that the magistrate judge was in the course of presiding over jury selection in several pro se prisoner cases.

a panel of jurors to hear the case, and sent the panel home, advising them to contact the Clerk of Court concerning their duty to report for jury service on March 19, 1996, the anticipated date of trial.

On March 6, 1996, Thomas filed with the district court an application entitled "Plaintiff's Objections to Magistrate Judge Selection of Jury on February 22, 1996." Thomas did not suggest that the magistrate judge conducted the selection process improperly; nor did he interpose an objection to the composition of the panel. Rather, he argued that he did not consent to the magistrate judge's supervision of the voir dire, and therefore a "new jury should be [s]elected by a judge." The district judge denied this motion in an order dated March 6th, stating that he was "satisfied that the jury selection was properly designated to and conducted by [the] Magistrate." The trial commenced on March 19, 1996. At the start of trial, Thomas orally renewed his objection to the magistrate judge's supervision of the jury selection process. Thomas also requested that the jury be dismissed and the case be tried to the court, although the district judge denied this application based on the Appellees' unwillingness to consent to a non-jury trial. The jury was sworn, the trial began and a verdict in favor of the Appellees was returned two days later. The verdict was reduced to judgment on March 21, 1996. Thomas moved for a new trial on March 29, 1996, restating his objection to the district court's use of a magistrate judge to supervise jury selection. The motion was denied in an order dated April 5, 1996. Thomas filed a notice of appeal on April 17, 1996. He has been supplied with counsel for the sole purpose of addressing the propriety of the magistrate judge's handling of the jury selection process.

4

This appeal raises questions of law that must be examined <u>de novo</u>. The first issue for review requires us to ask if a magistrate judge may preside over jury selection in a civil case despite the properly preserved objection of one of the parties. Magistrate judges do not share the privileges or exercise the authority of judges appointed under Article III of the United States Constitution; rather, magistrate judges draw their authority entirely from an exercise of Congressional power under Article I of the Constitution. Consequently, magistrate judges may not act contrary to the limitations prescribed by the national legislature. <u>See</u>, <u>e.g.</u>, <u>NLRB v. A-Plus Roofing, Inc.</u>, 39 F.3d 1410, 1415 (9th Cir. 1994) (stating that "federal magistrates are creatures of statute, and so is their jurisdiction. [Courts] cannot augment it [and] cannot ask them to do something Congress has not authorized them to do"). The jurisdiction and duties of federal magistrate judges are outlined principally in section 636 of Title 28 of the United States Code. The statute, among other things, grants district judges the authority to assign certain pre-trial matters to the appropriate magistrate judge. 28 U.S.C. §636(b)(1). Section 636(b)(3) also permits a district judge to assign to a magistrate, with or without the consent of the parties, "such additional duties as are not inconsistent with the Constitution and laws of the United States."

The statute does not afford magistrate judges the right to preside over trials (except for the trial of misdemeanor criminal offenses in accordance with 18 U.S.C. §3401). Section 636(c) does permit a district judge to designate a magistrate judge to "conduct any or all proceedings in a jury or nonjury civil matter," but <u>only</u>

"[u]pon the consent of the parties." See Hall v. Sharpe, 812 F.2d 644, 646-47 (11th Cir. 1987) (observing that section 636(c) authorizes a magistrate judge to conduct civil jury trials, but stressing that "[e]xplicit, voluntary consent is crucial to this procedure" in order to obviate concerns about constitutionality and protect against the wholesale delegation of certain classes of cases and litigants); see also Fowler v. Jones, 899 F.2d 1088, 1092 (11th Cir. 1990) (adding that "'valid consent is the linchpin of 28 U.S.C. §636(c)'") (citation omitted). The plain language of the statute establishes that if one of the parties in a civil lawsuit pending before a district court states his unwillingness to consent to a trial before a magistrate judge, the district court cannot designate a magistrate judge to preside over the trial.

The question becomes, therefore, whether the jury selection process can be parsed from other aspects of a trial, bringing the process of selecting a jury within the "additional duties" clause of section 636(b)(3). In Gomez v. United States, 490 U.S. 858, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989), the United States Supreme Court held that the "additional duties" clause does not encompass the selection of a jury in a felony trial where the defendant has refused to consent to the magistrate's exercise of power. The Court emphasized that voir dire is a "critical stage of the criminal proceeding," and specifically rejected the notion that Congress did not consider voir dire to be part of trial. 490 U.S. at 873, 109 S. Ct. at 2246-47. Thus, "[t]he absence of a specific reference to jury selection in the statute, or indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause to embrace this function." 490 U.S. at 875-76, 109 S. Ct. at 2248. In Peretz v. United States, 501 U.S.

6

923, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991), the Supreme Court held that the statute's "additional duties" clause constitutionally permits a magistrate judge to supervise jury selection in a felony trial where the parties state their consent. In so holding, however, Peretz reaffirmed the reasoning in Gomez, and added that, where consent is lacking, courts should be reluctant "to construe the additional duties clause to include responsibilities of far greater importance than the specified duties assigned to magistrates." 501 U.S. at 933, 111 S. Ct. at 2667. The principles adopted in these cases have been applied in this Circuit. See Grassi v. United States, 937 F.2d 578, 579 (11th Cir. 1991) (per curiam) (acknowledging that, in Gomez, the Supreme Court held that magistrates are not authorized to preside over jury selection in felony cases without a defendant's consent, but finding no error since all parties consented to the magistrate's exercise of this authority).

Relying on Gomez, two of our sister Circuits have held, we think correctly, that a magistrate judge is not empowered to conduct the voir dire in a civil jury trial over the objection of one or more of the parties. The Seventh Circuit, in Olympia Hotels Corp. v. Johnson Wax Development Corp., 908 F.2d 1363 (7th Cir. 1990), observed that section 636 does not expressly authorize magistrate judges to try cases (civil or criminal), and added that reading the "additional duties" clause to encompass some or all of a jury trial would render meaningless other language in the statute. Id. at 1368 (stating that there "would [not] be much point to the elaborate provisions in section 636(c) for the conduct of civil trials (including jury trials) by a magistrate with the consent of both parties if a district judge could compel the

7

parties, against their wishes, to submit to a magistrate's conducting vital stages in the trial, such as _voir_ _dire_ of the jury").  Moreover, remarked the court, it is unsound to suggest that _voir_ _dire_ is no more essential, and no less an opportunity for delegation, than pre-trial discovery, which section 636 authorizes magistrates to supervise without the parties' consent:

> We are doubtful whether these are symmetrical exercises of judicial power.  Pretrial discovery is conducted largely by the parties on their own, and of course out of court; judicial supervision is minimal.  The _voir_ _dire_, in contrast, is a vital stage of every jury trial.  It is the jurors' first encounter with the court; and the presence of the judge who will preside at trial helps impress on the jurors the gravity of their mission.  It is also the judge's best opportunity to "size up" the jury, because it will probably be the only occasion on which any of the juror's speak in the judge's presence.  Sizing up the jury is important to the judge's rulings on evidentiary questions, on motions for mistrials and new trials, and on other matters requiring an assessment of the particular juror's ability and attentiveness; on these questions we defer broadly to the trial judge's judgment, in part because of his superior opportunity to evaluate the jurors.  The trial is diminished when different judicial officers preside at the _voir_ _dire_ and at the presentation of evidence; the pretrial, much less so.

_Id_. at 1369 (citation omitted).  Subsequently, in _Stockler v. Garratt_, 974 F.2d 730 (6th Cir. 1992), the Sixth Circuit agreed with the reasoning in _Olympia Hotel_, finding that under the statute "jury selection in a civil trial is not one of the additional supervisory duties which can be delegated to a magistrate . . . without the consent of the parties."  _Id_. at 732.  Thus, "in the present case, it was error for the district court to allow a magistrate to conduct _voir_ _dire_ over the objection of [the plaintiff]."  _Id_.  These opinions reinforce what the statute should make plain:  Section 636 does not permit magistrate judges, under

8

the guise of the "additional duties" clause, to conduct the jury selection portion of a civil trial unless the parties have given their consent.

## III.

Since there can be no quarrel with Thomas's claim that he refused to give his express, voluntary consent in this case, we turn to the issue of harmless error. Although the test for harmless error varies somewhat with the context, generally it connotes error that has little or no impact on the affected party's substantive rights. See, e.g., Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967) (holding that certain federal constitutional errors may not require reversal of a criminal conviction if shown to be harmless beyond a reasonable doubt); Williams v. Singletary, 114 F.3d 177, 179-80 (11th Cir. 1997) (per curiam) (noting that a constitutional error at trial is not harmless if it "'ha[s] substantial and injurious effect or influence in determining the jury's verdict'") (citation omitted). The Appellees' brief focuses entirely on this theory. In essence, the Appellees contend that we need not reach the question of whether a magistrate judge may preside over jury selection against the wishes of a party, since any error in this case was harmless. Specifically, "[T]homas does not offer any indication that he was affected in any way by the fact that a magistrate presided over the jury selection process. He points to no ruling by the magistrate with which he was displeased, nor does he suggest how the jury which was selected differed from the jury which might have been selected if the district court judge had presided over the process." Appellees' Brief, at 3-4.

This language appears to be culled directly from the Eleventh Circuit's decision in <u>United States v. Rodriquez-Suarez</u>, 856 F.2d 135 (11th Cir. 1988), <u>cert. denied</u>, 488 U.S. 1045, 109 S. Ct. 875, 102 L. Ed. 998 (1989).  In that case, the defendant was sentenced for possession with intent to distribute or importation of more than 500 grams of cocaine.  On appeal, he argued, among other things, that the district court's designation of a magistrate judge to preside over jury selection violated 28 U.S.C. §636 and Article III.  The court did not reach the question of whether the magistrate's supervision of the jury selection process was improper, finding instead that any error which may have occurred "was harmless beyond a reasonable doubt."  The court explained that the defendant did "not offer any indication that he was affected in any way by the fact that a magistrate presided over the jury selection process.  He points to no ruling by the magistrate with which he was displeased, nor does he suggest how the jury which was selected differed from the jury which might have been selected if the district court judge presided over the process."  <u>Id</u>. at 139.  As support for its conclusion, the court cited <u>Chapman</u>.

<u>Rodriquez-Suarez</u>, however, was issued before the Supreme Court's 1989 opinion in <u>Gomez</u>.  That opinion squarely holds that a magistrate judge may not conduct <u>voir</u> <u>dire</u> in a felony case where the defendant interposes an objection to this practice.  Of more immediate significance, though, the opinion also disavows the harmless error analysis applied by this Circuit in <u>Rodriquez-Suarez</u>.  In <u>Gomez</u>, the United States argued that "any error . . . was harmless because [defendants] allege no specific prejudice as a result of the Magistrate's conducting the <u>voir</u> <u>dire</u> examination."  Indeed, observed the government, when the case returned to the

10

district court, the defendants declined the judge's offer to review the magistrate's rulings de novo, and did not challenge the selection of any particular juror. The Supreme Court nevertheless found reversible error, offering the following comments:

> Among those basic fair trial rights that "'can never be treated as harmless'" is a defendant's "right to an impartial adjudicator, be it judge or jury." Equally basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside. Thus harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury.

490 U.S. at 876 (citations omitted).

It could be suggested that the harmless error analysis in Rodriguez-Suarez remains sound, even if the holding itself is no longer good law with respect to felony cases.[2] But Gomez, while arising in the criminal as opposed to civil context, clearly signals that a magistrate's supervision of the voir dire process, in the face of an objection from one of the parties, is not the stuff of harmless error. Arguably the criminal context differs somewhat, since the constitutional rights granted criminal defendants are more expansive than those ordinarily accorded civil litigants. The underlying point is the same, though: it can never be genuinely "harmless" for a litigant, over his objection, to be compelled to try some or all his case before a non-Article III judicial officer not entitled to exercise the power of an Article III judge.

------

[2]It is unclear from the text of Rodriguez-Suarez whether the defendant in that case agreed to the magistrate's supervision of the jury selection process. To the extent the defendant gave his consent, of course, the opinion lends even less weight to the Appellees' position here. See, e.g., Peretz.

Rodriquez-Suarez was issued before the Sixth and Seventh Circuits, drawing largely on Gomez, applied the reasoning of that opinion to civil lawsuits. In Olympia Hotel, the Seventh Circuit rejected a harmless error argument in the context of a civil lawsuit, stating that although the affected party made no effort to show how it was harmed by the magistrate judge's actual handling of the voir dire, "issues of entitlement to a particular kind of tribunal are in general not subject to the harmless error rule." 908 F.2d at 1369. The Sixth Circuit in Stockler reached the same conclusion, explaining "we do not believe that if a party in a civil action explicitly objects to having a magistrate conduct voir dire and the court consciously ignores this objection . . . it can be considered harmless error." 974 F.2d at 733. Otherwise, said the court, district judges and magistrates could "ignore the dictates of the [statute] with impunity and force civil litigants to submit to the jurisdiction of a magistrate without their consent unless a party could demonstrate exactly how the trial would have been different if an Article III judge, rather than the magistrate, had conducted the voir dire." Id. Other courts have recognized that aspects of the jury selection process may not lend themselves to harmless error. See, e.g., United States v. Rowe, 106 F.3d 1226, 1229 (5th Cir. 1997) (finding "no need to show specific prejudice from a voir dire procedure that cut off meaningful responses to critical questions" in a case where the district court's remarks may have chilled prospective jurors from truthfully answering questions about possible bias). Indeed, there does not appear to be any post-Gomez case law finding harmless error under the circumstances presented in this appeal.

The Appellees' theory of harmless error raises many troublesome mechanical questions. To begin with, their reasoning conceivably could be used to justify a magistrate judge's decision to preside over not just jury selection, but an entire civil trial. The jury selection process cannot be deemed merely an ancillary or preliminary phase of a trial; it is every bit as much a part of the trial as the opening statement, the examination of witnesses and the charging of the jury. See Gomez, 490 U.S. at 874-75, 109 S. Ct. at 2247 (stating that "[f]ar from an administrative empanelment process, voir dire represents jurors' first introduction to the substantive factual and legal issues in a case"); Olympia Hotel, 908 F.2d at 1369; see also FDIC v. LeGrand, 43 F.3d 163, 167 (5th Cir. 1995) (distinguishing Gomez and its progeny, in the course of upholding a magistrate's ability to enter a postjudgment discovery order, by highlighting "the critical nature of voir dire and its potentiality for affecting the outcome of a trial"). Moreover, it is unclear precisely what kind of showing a party like Thomas must make in order to establish that the error is "harmful." For the Appellees' theory to make analytic sense, a party like Thomas presumably must do more than simply articulate one or more rulings by the magistrate judge with which he is "displeased." Rather, he must show that somehow the overall result (or at least a discrete ruling) would have been materially different if the challenged portion of the case had been supervised by the district court. This requirement imposes an inordinate, if not impossible, burden on a non-consenting party, and misapprehends the nature of the harm under these circumstances.

In any event, as the Seventh Circuit suggests, there may well be a real measure of harm to the entire trial process when a

13

district judge absents himself from the voir dire stage, at least where the parties have not expressly and voluntarily indicated their consent. The credibility evaluation required in response to the argument that preemptory challenges have been exercised for unlawful discriminatory reasons, see, e.g., United States v. Tokars, 95 F.3d 1520 (11th Cir. 1996), cert. denied, — U.S. —, 117 S. Ct. 1282, 137 L. Ed. 2d 357 and — U.S. —, 117 S. Ct. 138 (1997), may inform the district court's resolution of evidentiary issues during the remainder of the trial. The converse may also be true; a district court may need to rethink credibility determinations made during jury selection in light of subsequent events suggesting discriminatory intent. Similarly, having supervised the jury selection process and observed the behavior of panel members during the voir dire, the district court may be better positioned to respond appropriately when issues concerning juror misconduct arise during the course of trial. In these and other situations, the district judge's absence from the voir dire conceivably may impact his ability to preside effectively over other aspects of the trial. See Gomez, 490 U.S. at 874-75, 109 S. Ct. at 2247-48 (indicating "serious doubts" about the ability of district judges simply to acquaint themselves with the jury selection process based on written transcripts, since "no transcript can recapture the atmosphere of the voir dire, which may persist throughout the trial"). Admittedly these concerns may be relevant even where both parties supply their consent. But the absence of mutual consent suggests that at least one litigant, having contemplated the advantages and disadvantages of this practice, is not prepared to ignore his concerns for the trial in which he is a participant. Cf. Peretz, 501 U.S. at 936 n.12, 111 S. Ct. at 2669 n.12

14

(reiterating that jury selection is an "important function" that may warrant the participation of the district judge, but adding that counsel can "sensibly balance these considerations against other concerns in deciding whether to object to a magistrate's supervision of voir dire").  More to the point, Congress, by permitting district courts to assign to magistrate judges "all proceedings in a jury or nonjury civil matter" with the consent of the parties, has implicitly concluded that any detriment to the trial process that might result if the presiding district judge delegates jury selection to a magistrate is mitigated if the parties agree to this procedure.

A useful analogy can be drawn by examining the Appellees' harmless error argument in the context of the statutory limits on federal subject matter jurisdiction under Article III.  Suppose a district court found, despite a defendant's objection, that it could exercise diversity jurisdiction over a civil lawsuit even though it recognized that the amount in controversy fell below the statutory minimum set by 28 U.S.C. §1332.  There is no case law in this, or any other, Circuit suggesting that the district court's jurisdictional ruling could be overlooked as "harmless" on appeal simply upon a showing that, in all other respects, the district court's resolution of the case was thoroughly error-free.  The essence of the harm in this situation is the fact that the lawsuit was entertained by a tribunal that, according to Congress, had no power to entertain the dispute.  The same reasoning applies here; the harm to Appellant Thomas flows not from the adequacy or inadequacy of the magistrate judge's handling of the jury selection process, but rather from the fact that Congress did not afford magistrate judges the power to preside over any aspect of the trial

15

of a civil lawsuit without the express consent of the parties (and certainly not in the face of repeated and unequivocal objection from a plaintiff). The statute expressly permits litigants like Thomas to insist on having an entire trial take place before a United States District Judge; adopting the Appellees' harmless error argument saps this statutory language of meaning, and significantly undermines the right of a federal court litigant to have his case tried before a judge who has been appointed by the President and is afforded the constitutional protection of Article III.[3] Consequently, the concept of harmless error cannot be used to sustain the underlying judgment, since that judgment was rendered by a jury whose selection was supervised by a magistrate judge who lacked the statutory authority to undertake the task assigned to him by the district court.

For all of the foregoing reasons, the district court's denial of the Appellant's new trial motion must be and is REVERSED. The judgment is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

---

[3]Having concluded that the magistrate judge exceeded his statutorily-created authority by conducting jury selection in this case without the consent of the parties, we need not and do not address any constitutional implications of this practice.