[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 02, 2002
THOMAS K. KAHN
CLERK

————————————————

No. 00-13097

————————————————

D. C. Docket No. 98-00550-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN CARLOS RUIZ-RODRIGUEZ,
a.k.a. Juan Carlos Ruiz, JOSE ANTONIO
LIMA-BORROTO, a.k.a. Jose Antonio
Lima-Borroto, et al.,

Defendants-Appellants.

————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————

**(January 2, 2002)**

Before HULL, MARCUS and FARRIS[*], Circuit Judges.

HULL, Circuit Judge:

———————————

[*]Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

Defendants Juan Carlos Ruiz-Rodriguez, Jose Lima-Borroto, and Miguel Broche-Ortiz appeal their convictions and sentences arising out of their conspiracy to smuggle aliens on a boat from Cuba into the United States. Defendant Broche-Ortiz also appeals his conviction and sentence for illegal reentry into the United States. After review and oral argument, we affirm all defendants' convictions, but vacate their sentences. Because the district court erred in delegating to the magistrate judge the evidentiary and fact-finding portion of the defendants' sentencing hearing in this felony case without the defendants' consent, we vacate all defendants' sentences in their entirety and remand this case for re-sentencing as to all defendants on all counts of their convictions.

## I. BACKGROUND

### A. Convictions

The district court presided over the defendants' jury trial. After a four-day trial, the jury convicted defendants Ruiz-Rodriguez, Lima-Borroto, and Broche-Ortiz of one count of conspiracy to encourage and induce aliens to enter and reside in the United States, in violation of 8 U.S.C. § 1324 (a)(1)(A)(v)(I). The jury also convicted defendants Lima-Borroto and Broche-Ortiz of three counts of encouraging and inducing aliens to enter and reside in the United States, in violation of 8 U.S.C. §§ 1324 (a)(1)(A)(iv) and (a)(1)(A)(v)(II), and defendant

2

Broche-Ortiz of one count of illegal reentry into the United States, in violation of 8 U.S.C. § 1326 (a). The jury acquitted the defendants of three counts of attempting to bring aliens into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). All of these offenses are felonies.

**B.  Presentence Investigation Reports**

Based on the trial evidence, the presentence investigation reports ("PSI's") outlined the defendants' offense conduct in detail and recommended to the district court total adjusted offense levels of either twenty-seven or twenty-eight under the United States Sentencing Guidelines. In doing so, the PSI's started with a base offense level of twelve and increased that level upward indicating defendants' offense conduct involved between twenty-five and ninety-nine aliens under U.S.S.G § 2L1.1 (b)(2)(B), defendants' conduct created a substantial risk of death or serious bodily injury for some aliens under U.S.S.G. § 2L1.1(b)(5) and actually caused other aliens to sustain serious bodily injury under U.S.S.G § 2L1.1(b)(6)(2), and the defendants had aggravating roles in an offense which involved five or more participants under U.S.S.G. § 3B1.1(b).

The defendants filed written objections to their PSI's, contesting both these factual findings regarding their offense conduct and the increases in their base offense levels. The defendants also objected to their PSI's failure to include a

3

three-level decrease under U.S.S.G § 2L1.1(b)(1), which provides for a decrease if an alien smuggling offense was committed other than for profit. The defendants argued that the trial evidence showed their offenses were committed other than for profit, as evinced by the jury's acquitting them on the three counts of attempting to smuggle aliens for financial gain. The government responded to those objections, asserting that the trial evidence supported the factual findings about the defendants' offense conduct and the offense level increases based thereon. The government also indicated that it would introduce other evidence in support of these factual findings and offense level increases during the defendants' sentencing hearing.

## C.    Referral to the Magistrate Judge

On October 19, 1999, the district court sua sponte entered a two-sentence summary order, referring the defendants' case to a magistrate judge "to conduct an evidentiary hearing on factual issues raised by the defendants' and Government's objections to the [PSI's] and for all such judicial proceedings as are permissible under the Magistrates' Act and the Rules of Court for the Southern District of Florida." The magistrate judge scheduled this evidentiary hearing for December 16, 1999.

During that December 16 hearing, all three defendants objected to the magistrate judge's authority to conduct an evidentiary hearing regarding their

sentences. In response, the magistrate judge ordered all parties to submit briefs addressing the magistrate judge's authority in this regard. In those briefs, both the government and the defendants argued that the district court should conduct the evidentiary hearing.[1] The magistrate judge did not enter a formal order on the defendants' objections and proceeded to conduct the evidentiary hearing on March 1 and March 8, 2000.

At the outset of the March 1 hearing, the defendants reiterated their objections to the magistrate judge's authority to conduct the proceeding. The government then announced its intention to call INS special agent Hector Henao ("Henao"), the lead agent on the defendants' case, to testify in support of a portion of the offense conduct outlined in each defendant's PSI. In response, the parties and the magistrate judge debated whether it was proper for the government to introduce additional evidence not contained in the trial record, or whether the magistrate judge's only role was to review the extensive trial record and base his factual findings on that record. The magistrate judge ultimately allowed Henao to testify.

---

[1]Although the parties agreed that the district court should conduct the evidentiary hearing, only the defendants argued that the referral to a magistrate judge violated both Article III of the Constitution and the Federal Magistrates Act, 28 U.S.C. § 636. The government, on the other hand, did not take a firm position on whether or not this referral was lawful.

After Henao testified, the remainder of the hearing before the magistrate

judge primarily involved the defendants' arguments concerning whether the trial

evidence supported the factual findings about the offense conduct in each

defendant's PSI.[2]  For example, the defendants argued that the trial evidence did not

support the factual finding that there were five participants involved in their

conspiracy.  In particular, the defendants complained that the magistrate judge's

resolution of certain factual disputes for sentencing purposes would depend on

credibility determinations concerning trial witnesses whom the magistrate judge had

not observed, stating:

> [T]his goes back to the inherent problem factually with the proceeding
> as a whole because Your Honor is sitting now as a second trier of fact
> and having to assess credibility of witnesses who aren't sitting before
> Your Honor.[3]

---

[2]The defendants were convicted during March 1999, but it was not until
October 1999 that the district court referred the defendants' case to the magistrate
judge.  In that interim period, the over 800-page trial transcript was filed and was
thus available for the magistrate judge's review before this March 2000 hearing.

[3]In response, the magistrate judge stated "I'm doing the best I can with what
I've got," and later noted that he could not make credibility determinations of
witnesses he had not observed, and that he would have to decide certain issues
without making such determinations, stating:

> First of all, for whatever it's worth, the defendants . . . you're right, I
> cannot make a credibility determination as it regards to [the
> government's main witness] obviously.  It's impossible.  All I can go
> by is the information before me . . . I am going to resolve this question
> based on what I know and what I know the imprint [sic] and in the

Over the defendants' objections, the magistrate judge also admitted this additional evidence for the purpose of the sentencing hearing: (1) an affidavit of a doctor who had treated an alien child for pneumonia after that child had taken the boat trip from Cuba; (2) an affidavit from that child's mother; and (3) that child's medical records.

**D.    The Magistrate Judge's Report**

Following the March evidentiary hearing, the magistrate judge issued his report and recommendation ("the Report") to the district court, which outlined proposed findings of fact and conclusions of law regarding the defendants' offense conduct, total adjusted offense levels, and their objections to their PSI's.  In particular, the magistrate judge made factual findings regarding the number of aliens involved in the defendants' offense conduct, whether the defendants' conduct

---

record.
The defendants also raised concerns about the magistrate judge's inability to make credibility determinations regarding whether aliens sustained bodily harm. Specifically, as to the trial evidence that certain alien children became dehydrated during the smuggling offense, the defendants again emphasized "the problem of assessing credibility . . . [y]ou are and you have told you are going to make findings of fact . . . I don't see how you could make findings of fact without having been at the trial."

created a risk of serious bodily injury and whether certain aliens actually sustained serious bodily injury, each defendant's role in the offense, and whether their offenses were conducted for profit. For example, the magistrate judge concluded that the defendants' offense conduct created a substantial risk of death or serious bodily injury because "[t]he evidence showed that between thirty seven and forty two people, including eleven children, were being transported from Cuba to Miami on a twenty nine foot boat equipped with only eight life jackets." The magistrate judge also found "sufficient evidence that bodily injury occurred, in that when the Coast Guard located the vessel, several children were going in and out of consciousness due to dehydration." Regarding the defendants' roles, the magistrate judge found that there was sufficient evidence to support a finding of five or more persons involved in the conspiracy and that those persons included "Defendants . . . , the person referred to by witnesses as 'Berto,' Emma Barquero, who provided the introduction of Francisco Cruz to Defendant Ruiz, and the unidentified man who was at the meeting with Francisco Cruz when details of the venture were discussed."

In the district court, the defendants timely filed written objections to the Report, again asserting that the magistrate judge lacked authority to conduct the evidentiary and fact-finding portion of their sentencing hearing. Notwithstanding

8

the defendants' objections, the district court entered a two-page order as to each defendant (a) summarily adopting and affirming the recommendations in the Report and (b) instructing the U.S. Probation Office to revise the PSI's to reflect the magistrate judge's findings about the offense conduct and to recalculate the total offense levels and sentencing guideline ranges in accordance with the magistrate judge's recommendations. The district court's orders did not address the defendants' objections to the referral to the magistrate judge. The magistrate judge's recommendations, adopted by the district court, resulted in these recalculated total offense levels and guideline ranges: (1) total offense level of twenty-two and 41-51 months' imprisonment range for defendant Broche-Ortiz; and (2) total offense levels of twenty-three and 46-57 months' imprisonment ranges for defendants Lima-Borroto and Ruiz-Rodriguez.[4]

Following these recalculations, the district court conducted a brief sentencing hearing during which it heard argument only about whether the defendants should be sentenced at the high or low end of these guideline ranges. Once again, defendants raised their objections concerning the prior delegation to the magistrate

---

[4]The PSI's also indicated that each defendant had a Criminal History Category I. Neither the government nor the defendants objected to the PSI's in that regard.

judge.[5]  The district court then sentenced (1) defendant Broche-Ortiz to concurrent terms of 41 months' imprisonment, (2) defendant Lima-Borroto to concurrent terms of 46 months' imprisonment, and (3) defendant Ruiz-Rodriguez to 46 months' imprisonment.  The defendants timely appealed.

## II.  DISCUSSION

Defendants challenge their sentences, arguing that the district court erred in delegating to the magistrate judge the evidentiary and fact-finding portion of their sentencing hearing without their consent.[6]  For the reasons discussed below, we agree and must vacate the defendants' sentences in their entirety.[7]  We first review

---

[5]Although the defendants repeatedly objected to the referral and briefed the issue, the lawfulness of the referral was not specifically addressed in any orders in this case.

[6]We review this question of law de novo.  See Thomas v. Whitworth, 136 F.3d 756, 758 (11th Cir. 1998) (noting that the issue of whether a magistrate judge may conduct jury selection in a civil case without the parties' consent is a "question[] of law that must be examined de novo").

[7]We, however, affirm the defendants' convictions because all of the defendants' claims regarding their convictions lack merit.  The defendants argue, inter alia, (1) that the district court should have dismissed their indictment because of the government's having deported certain witnesses and subsequent alleged failure to make these witnesses available and (2) that the trial evidence was insufficient to support their convictions.  After review and oral argument, we find that some of these witnesses returned to the United States, that the government did not totally fail to make these witnesses available as contended by the defendants, that the government did seek to make other witnesses outside the United States available for telephone depositions which the defendants rejected, and that the trial evidence was more than sufficient to support their convictions.  Thus, the

10

the authority Congress has granted to magistrate judges in 28 U.S.C. § 636, known as the Federal Magistrates Act, and in 18 U.S.C. § 3401. We then review both Supreme Court and our circuit's precedents regarding a magistrate judge's authority.

## A. Specific Grants of Authority

As this Court has emphasized before, "magistrate judges draw their authority entirely from an exercise of Congressional power under Article I of the Constitution." Thomas v. Whitworth, 136 F.3d 756, 758 (11th Cir. 1998).[8] Congress granted authority to magistrate judges in both 28 U.S.C. § 636 and 18 U.S.C. § 3401. Although both statutes contain numerous specific grants of authority, we first conclude that these statutes do not contain any specific grant of authority for a magistrate judge, either independently or on a district court's referral for a report and recommendation, to conduct the evidentiary and fact-finding portion of the sentencing hearing in a felony case.

Although § 636 and § 3401 specifically grant initial sentencing authority to magistrate judges in petty offenses, and, if the defendant consents, in certain

defendants' claims lack merit and do not warrant further discussion.

[8]As stated in Thomas, "[m]agistrate judges do not share the privileges or exercise the authority of judges appointed under Article III of the United States Constitution." 136 F.3d at 758.

11

misdemeanors, there is no similar specific grant of initial sentencing authority in a felony case. More explicitly, under § 636(a)(3), a magistrate judge has "the power to conduct trials under section 3401 . . . in conformity with and subject to the limitations of that section." 28 U.S.C. § 636(a)(3). Under § 3401, a magistrate judge may try and sentence persons convicted of misdemeanors, but "[a]ny person charged with a misdemeanor, other than a petty offense may elect to be tried before a district judge," "[t]he magistrate judge shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a district judge," and "[t]he magistrate judge may not proceed to try the case unless the defendant . . . expressly consents." 18 U.S.C. § 3401(b). A magistrate judge also has "the power to enter a sentence for a petty offense" under § 636(a)(4) and "the power to enter a sentence for a class A misdemeanor in a case in which the parties have consented" under § 636(a)(5). Thus, while a magistrate judge may try and sentence a defendant for a petty offense, a magistrate judge may try and sentence a defendant for a misdemeanor only if the defendant expressly consents. The fact that Congress has specified that sentencing for a class A misdemeanor can be performed by a magistrate judge only with the parties' consent alone indicates the sentencing delegation here was problematic in this felony case without the defendants' consent.

In addition to this limited initial sentencing authority, the statutory scheme also carefully circumscribes a magistrate judge's authority over subsequent probation and supervised release proceedings. Section 3401(d) provides that "[t]he probation laws shall be applicable to persons tried by a magistrate under this section, and such officer shall have power to grant probation and to revoke, modify, or reinstate the probation of any person granted probation by a magistrate judge." 18 U.S.C. § 3401(d). As for supervised release, a magistrate judge has the "power to modify, revoke, or terminate supervised release of any person sentenced to a term of supervised release by a magistrate judge." Id. § 3401(h). In addition, "[a] district judge may designate a magistrate judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the judge proposed findings of fact and recommendations." Id. § 3401(i).[9]

---

[9]Congress added subsections (h) and (i), both of which deal only with supervised release, to § 3401 by amendment in 1992. See Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 103, 1992 U.S.C.C.A.N. 4506, 4507. The courts have begun to interpret whether a defendant must consent to a delegation under § 3401(i). Compare United States v. Colacurcio, 84 F.3d 326, 332 (9th Cir. 1996) ("Even assuming that somehow we could read subsections (h) and (i) as granting magistrate judges separate authority under § 3401 to conduct probation revocation hearings, we still would require defendant's consent.") with United States v. Waters, 158 F.3d 933, 938-39 (6th Cir. 1998) (rejecting the reasoning of the Ninth Circuit in Colacurcio, and concluding that § 3401(i) authorizes a magistrate judge to conduct a hearing concerning supervised release

Although at least some authority is specifically granted regarding petty offenses, misdemeanors, supervised release and probation, notably absent in this statutory scheme is any specific grant of authority to a magistrate judge to sentence initially in a felony case or even any authority for a district court to delegate in a felony case the evidentiary and fact-finding portion of an initial sentencing hearing on a report and recommendation basis. Moreover, in addition to carving out only certain sentencing functions, Congress delineates with great specificity in § 636(b)(1)(A) and § 636(b)(1)(B) the circumstances in which a magistrate judge has authority to conduct evidentiary hearings on a report and recommendation basis, and none of these circumstances include the hearing at issue here. Thus, we conclude that there is no specific grant of authority in either § 636 or § 3401 for a district court to delegate to a magistrate judge the evidentiary and fact-finding portion of a sentencing hearing in a felony case.

**B.    "Additional Duties" Clause**

This determination would resolve the matter were it not for the fact that § 636 also contains a general "additional duties" clause, which provides that "[a]

---

absent a defendant's consent). The Sixth Circuit has also addressed whether § 3401(i) applies to only misdemeanors or also to felonies. See Waters, 158 F.3d at 938 (rejecting the defendant's argument that § 3401 applies only to misdemeanors). This circuit has not yet addressed either issue.

14

magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). Therefore, the next question becomes whether the "additional duties" clause authorizes a district court to delegate to a magistrate judge the evidentiary and fact-finding portion of a sentencing hearing in a felony case when a defendant does not consent.[10] While not addressing this precise issue, prior decisions of both the Supreme Court and this circuit have construed this "additional duties" clause and provide the clear lead we must follow. We first review the relevant Supreme Court precedents, and then our circuit's decisions, regarding the "additional duties" clause.

### 1. Supreme Court Precedents

As stated above, a magistrate judge "may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). In Gomez v. United States, 490 U.S. 858 (1989), the district court delegated to the magistrate judge the task of selecting a jury and the defendant objected. Gomez, 490 U.S. at 860. The Supreme Court held in Gomez that the "additional duties" clause does not authorize a magistrate judge to conduct jury selection in a felony trial without a defendant's consent. Id. at 875-76. The

---

[10]Because the defendants objected to the delegation in this case, we need not examine whether the parties' consent, or solely a defendant's consent, may affect our conclusions in this appeal.

15

Supreme Court noted that "[r]ead literally and without reference to the context in which they appear, these words might encompass any assignment that is not explicitly prohibited by statute or by the Constitution." Id. at 863. Nonetheless, the Supreme Court proceeded to interpret § 636(b)(3) in the context of § 636's overall statutory scheme, purpose, and legislative history and concluded that the "additional duties" clause does not encompass jury selection.

In Gomez, the Supreme Court emphasized, among other things, that § 636's carefully defined grant of authority to conduct trials in civil matters and minor criminal cases should be construed as an implicit withholding of authority to preside at a felony trial, stating as follows:

> The district court retains the power to assign to magistrates unspecified "additional duties," subject only to conditions or review that the court may choose to impose. By a literal reading this additional duties clause would permit magistrates to conduct felony trials. But the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial. The legislative history, with its repeated statements that magistrates should handle subsidiary matters to enable district judges to concentrate on trying cases, and its assurances that magistrates' adjudicatory jurisdiction had been circumscribed in the interests of policy as well as constitutional constraints, confirms this inference. Similar considerations lead us to conclude that Congress also did not contemplate inclusion of jury selection in felony trials among a magistrate's additional duties.

Id. at 871-72 (footnotes omitted). Additionally, the Supreme Court in Gomez stressed that "[t]he absence of a specific reference to jury selection in [§ 636], or

indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause to embrace this function." Id. at 875-76 (footnote omitted).

Subsequently, in Peretz v. United States, 501 U.S. 923 (1991), the Supreme Court decided that a defendant's consent to a magistrate judge presiding over jury selection in a felony trial warranted a different result under the "additional duties" clause. The Supreme Court held that the "additional duties" clause "permits a magistrate to supervise jury selection in a felony trial provided the parties consent," Peretz, 501 U.S. at 933, and that "[t]here is no constitutional infirmity in the delegation of felony trial jury selection to a magistrate when the litigants consent," Peretz, 501 U.S. at 936. In Peretz, the Supreme Court distinguished Gomez by suggesting that its "holding in Gomez was narrow" and "carefully limited to the situation in which the parties had not acquiesced at trial to the magistrate's role." Id. at 927-28.

In explaining the reasons for its different conclusion in Gomez, the Supreme Court indicated that its chief concern in Gomez was to avoid the constitutional issue of "whether a defendant has a constitutional right to demand that an Article III judge preside at every critical stage of a felony trial," stating:

> Chief among our concerns [in Gomez] was this Court's 'settled policy to avoid an interpretation of a federal statute that engenders constitutional issues.' This policy was implicated in Gomez because of the substantial question whether a defendant has a constitutional right

17

> to demand that an Article III judge preside at every critical stage of a felony trial.

501 U.S. at 929 (internal citation and footnote omitted). In <u>Peretz</u>, the Supreme Court clarified that this constitutional question in <u>Gomez</u> had led it "to demand clear evidence that Congress actually intended to permit magistrates" to conduct jury selection during a felony trial absent a defendant's consent. <u>Id.</u> at 930. The Supreme Court also noted that in <u>Gomez</u> it "focused on the fact that those specified duties that were comparable to jury selection in a felony trial could be performed only with the consent of the litigants." <u>Id.</u> at 931.[11] In addition to reaffirming its reasoning in <u>Gomez</u>, the Supreme Court added in <u>Peretz</u> that absent a defendant's consent, it would be reluctant "to construe the additional duties clause to include responsibilities of far greater importance than the specified duties assigned to magistrates." <u>Id.</u> at 933.

---

[11]In <u>Peretz</u>, the Supreme Court further stated: "Because the specified duties that Congress authorized magistrates to perform without the consent of the parties were not comparable in importance to supervision of felony trial <u>voir dire</u> but were instead 'subsidiary matters,' we did not waver from our conclusion [in <u>Gomez</u>] that a magistrate cannot conduct <u>voir dire</u> over the defendant's objection. . . . This case differs critically from <u>Gomez</u> because petitioner's counsel, rather than objecting to the Magistrate's role, affirmatively welcomed it." 501 U.S. at 932 (internal citation omitted). <u>See</u> <u>Grassi v. United States</u>, 937 F.2d 578, 579 (11th Cir. 1991) (following <u>Peretz</u> and finding no error when a magistrate judge presided over jury selection in a felony case because all parties consented to the magistrate judge's exercise of authority).

18

The dissents in <u>Peretz</u> countered that <u>Gomez</u> was based on the language in §

636 and statutory interpretation, not lack of consent, and that Congress in the

"additional duties" clause did not authorize delegation of jury selection to a

magistrate judge.  We briefly mention the statutory analysis in these dissents

because, as outlined later, while the result we reach is based largely on lack of

consent, the statutory language also informs our analysis.

In one dissent in <u>Peretz</u>, three justices argued that "[i]n <u>Gomez</u>, we held that

'[t]he absence of a specific reference to jury selection in the statute, or indeed, in

the legislative history, persuades us that Congress did not intend the additional

duties clause to embrace this function.'"  <u>Peretz</u>, 501 U.S. at 941 (Marshall, White

& Blackmun, JJ., dissenting) (quoting <u>Gomez</u>, 490 U.S. at 875-76).  This dissent's

view was that "the existence of a defendant's consent has absolutely no effect on

that conclusion."  <u>Id.</u>   The three justices further noted that, in <u>Gomez</u>, "[w]e

concluded that 'th[is] carefully defined grant of authority to conduct trials of civil

matters and of minor criminal cases [in § 636]' constituted 'an implicit withholding

of the authority to preside at a felony trial.'"  <u>Id.</u> at 943 (quoting <u>Gomez</u>, 490 U.S. at

872).

The dissent of a fourth justice agreed that <u>Gomez</u> was driven "by ordinary

principles of statutory interpretation."  <u>Id.</u> at 955.  (Scalia, J., dissenting).  The view

19

of this dissent was that "[b]y specifically authorizing magistrates to perform duties in civil and misdemeanor trials, and specifying the manner in which parties were to express their consent in those situations, the statute suggested absence of authority to preside over felony trials through some (unspecified) mode of consent. The canon of ejusdem generis keeps the 'additional duties' clause from swallowing up the rest of the statute." Id.

Despite these dissents, the majority in Peretz concluded that jury selection in a felony case "is an additional duty that may be delegated to a magistrate under 28 U.S.C. § 636(b)(3) if the litigants consent." Id. at 935. The majority further emphasized that "[t]he Act evinces a congressional belief that magistrates are well qualified to handle matters of similar importance to jury selection but conditions their authority to accept such responsibilities on the consent of the parties." Id. (emphasis added).

### 2. Eleventh Circuit Precedents

This Court recently examined the import of Gomez and Peretz in Thomas v. Whitworth, 136 F.3d 756 (11th Cir. 1998), United States v. Maragh, 174 F.3d 1202 (11th Cir. 1999), and United States v. Desir, 257 F.3d 1233 (11th Cir. 2001). In Thomas, we joined other circuits in holding that "[s]ection 636 does not permit magistrate judges, under the guise of the 'additional duties' clause, to conduct the

jury selection portion of a civil trial unless the parties have given their consent." 136 F.3d at 759 (citing and discussing Stockler v. Garratt, 974 F.2d 730 (6th Cir. 1992), and Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363 (7th Cir. 1990)).  Even in a civil case, we emphasized in Thomas that "where consent is lacking, courts should be reluctant 'to construe the additional duties clause to include responsibilities of far greater importance than the specified duties assigned to magistrates.'"  Id. (quoting Peretz, 501 U.S. at 933).

Our Maragh decision involved a criminal case but the dispute was mainly over whether the defendant actually had consented to the magistrate judge's presiding over jury selection.  174 F.3d at 1203.  In discussing the "additional duties" clause, we stated that "[t]he Supreme Court's interpretation of section 636(b)(3) establishes the presence or absence of consent as the crucial factor in

determining what duties the section encompasses."[12]  Id. at 1204 (citing Peretz, 501 U.S. at 934-36).

This Court likewise emphasized the importance of consent in Desir and reversed a felony conviction because the magistrate judge responded to a jury question without the defendant's express consent.  257 F.3d at 1238.  The magistrate judge denied the jury's request for a read back of certain trial testimony and instructed the jury to rely on their collective memories.  Id. at 1235.  The jury trial was before the district court, the jury question was handled solely by the magistrate judge, and the district court judge "was not present and in fact was not informed that a question was even asked by the jurors, let alone the content of the question."  Id. at 1238.  Thus, in Desir, this Court concluded that "[w]hen a matter conducted solely by a magistrate judge constitutes a critical stage of the criminal

---

[12]In Maragh, we announced a prospective rule:
To effectuate appropriate consent when a magistrate judge is delegated the district court's authority to conduct voir dire, the magistrate judge or the district court judge must obtain, on the record, explicit and personal consent from all parties involved, particularly from the defendant.  We do not insist that the defendant must be personally addressed by the court, but the record must be such as to clearly show that the defendant has consented personally to the procedure.
174 F.3d at 1206.  Subsequently, we denied a petition for rehearing in that case, stating that "[w]e adhere to that decision except to the extent that it indicated we were applying the plain error standard of review." United States v. Maragh, 189 F.3d 1315, 1316 (11th Cir. 1999).

proceeding, such as instructing the jury, the absence of express consent from all parties, particularly the defendant, mandates reversal." Id. We pointed out that according to Gomez "the authority granted to magistrate judges under [§ 636] is to be construed narrowly." Id. at 1236. In Desir, we further opined that "the Supreme Court and this court [have] established a bright line rule that a magistrate judge exceeds his or her jurisdiction by presiding at a felony trial during a critical stage of the proceeding without the defendant's consent." Id. Therefore, we concluded "that the magistrate judge inappropriately exercised the authority of an Article III judge at a critical stage of the proceeding by responding to a jury's question that went beyond the simple performance of a ministerial task." Id. at 1238.

We now turn to the defendants' claims that their sentences must be vacated because the district court improperly delegated a critical portion of their sentencing hearing to the magistrate judge.

**C.    Defendants' Sentences**

Our Desir decision would answer the issue here were it not for the fact that Desir involved (a) a jury matter during a trial, and (b) the magistrate judge's acting alone. In contrast here, after hearing the trial evidence and after the conclusion of the jury trial, the district court merely delegated a portion of the defendants' sentencing hearing to the magistrate judge and only for a report and

23

recommendation subject to the district court's subsequent review. Nonetheless, applying the lessons from both Supreme Court and our precedents, we conclude that the delegation here, without the defendants' consent, was not authorized under the "additional duties" clause for several reasons.

First, similar to the jury matters during the felony trials in Desir and Peretz, the initial sentencing of a defendant in a felony case is undoubtedly a critical stage in a criminal proceeding.[13] Unlike the pre-trial stage during which a magistrate judge is specifically authorized to act without a defendant's consent, the initial sentencing in a felony case, like the trial itself, is a critical stage in the proceeding and often the most critical stage when a defendant pleads guilty.

Second, the fact that the district court delegated only a portion of the sentencing hearing on a report and recommendation basis does not change our critical stage analysis in this case. Indeed, given the Sentencing Guidelines, the evidentiary and fact-finding portion of the sentencing hearing in this felony case was at least as critical as the trial itself to these defendants facing substantial terms

[13]See Golden v. Newsome, 755 F.2d 1478, 1481-82 (11th Cir. 1985) ("The Sixth Amendment guarantees criminal defendants . . . the right to be represented by counsel and the related right to effective assistance of counsel. . . . These rights are fully applicable at a sentencing hearing, which has been called a 'critical stage' of the criminal proceeding."); United States v. Huff, 512 F.2d 66, 71 (5th Cir. 1975) (citing Mempa v. Rhay, 389 U.S. 128, 134 (1967) (extending Sixth Amendment right to counsel to sentencing hearings, in part, because of "the critical nature of sentencing in a criminal case")).

of imprisonment.[14]  Here, the factual findings about offense conduct were the most important part of the defendants' sentencing hearing and determined the ranges within which they were ultimately sentenced.  These factual findings increased the defendants' base offense levels from twelve upward to twenty-two or twenty-three depending on the defendant.  As the defendants aptly stress in this case, the magistrate judge lacked the ability to determine the credibility of the trial witnesses heard by the district court, yet made the factual findings regarding offense conduct which ultimately determined their sentences.  Even though these factual findings were subject to the district court's review, we believe Gomez, Peretz, and our circuit's precedents would still require a defendant's consent to eliminate what the Supreme Court has identified as potential constitutional problems that arise from having a non-Article III judge preside over such a critical stage of a criminal case. See Peretz, 501 U.S. at 929-30 (noting "the substantial question whether a

---

[14]See United States v. Salemo, 61 F.3d 214, 220 (3d Cir. 1995) (noting that "in some cases, one's ultimate fate is determined more by the application of the [Sentencing] Guidelines than the determination of innocence or guilt . . . [because] sentencing judges are not limited to a consideration of the specific conduct that constitutes the offense of conviction in determining whether a given offense characteristic applies"); United States v. Jackson, 32 F.3d 1101, 1105 (7th Cir. 1994) ("It is well-known that the imposition of sentence is a critical stage of criminal proceedings, if not the most critical, particularly where the defendant has pleaded guilty.  Under the Sentencing Guidelines, the court's resolution of disputed sentencing factors has a measurable effect on the punishment imposed.") (internal citations omitted).

defendant has a constitutional right to demand that an Article III judge preside at every critical stage of a felony trial"). Indeed, § 636(b)(3) itself states that a district court may assign to a magistrate judge only "such additional duties as are not inconsistent with the Constitution." 28 U.S.C. § 636(b)(3).

Third, while the result we reach is based on Peretz's and Desir's emphasis on the need for a defendant's consent when a critical stage of a felony proceeding is delegated to a magistrate judge under the "additional duties" clause, it still remains that the statutory language of § 636 and § 3401 informs the analysis of the "additional duties" clause. As the Supreme Court recognized in Peretz, "we would still be reluctant, as we were in Gomez, to construe the additional duties clause to include responsibilities of far greater importance than the specified duties assigned to magistrates." 501 U.S. at 933. Thus, in this case, § 636's and § 3401's carefully defined grant of authority to conduct only certain, limited sentencing functions should be construed as an implicit withholding of the authority to conduct an initial sentencing hearing in a felony case. See Gomez, 490 U.S. at 871-72 ("[T]he carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial."). This carefully crafted statutory scheme further supports

our conclusion here that the sentencing delegation in this case was not permissible under the "additional duties" clause without the defendants' consent.

Although we rely primarily on Supreme Court and our precedents, we note that other circuits, while not addressing the precise sentencing-delegation issue before us, have concluded that the "additional duties" clause does not authorize a district court to delegate to a magistrate judge the task of conducting a probation revocation hearing on a report and recommendation basis where the defendant was sentenced by the district court and the defendant objected to the referral. See United States v. Colacurcio, 84 F.3d 326 (9th Cir. 1996); United States v. Curry, 767 F.2d 328 (7th Cir. 1985); Banks v. United States, 614 F.2d 95 (6th Cir. 1980). In so concluding, the Sixth Circuit recognized that "[s]entencing is probably the most difficult task faced by a federal district judge," Banks, 614 F.2d at 99, and that Congress has been careful to retain the fact-finding functions in district court judges except in certain specified and limited situations, Banks, 614 F.2d at 98. Similarly, the Seventh Circuit emphasized that sentencing "is probably the single most important duty performed by judges" and "that Congress wanted magistrates to help judges with their more routine duties and for judges to continue to perform adjudicatory functions." Curry, 767 F.2d at 331.

27

We recognize that at the time the probation revocation issues in <u>Banks</u> and <u>Curry</u> were decided, Congress had not yet enacted the 1992 amendment adding § 3401(i), which authorizes a magistrate judge to conduct evidentiary hearings to modify, revoke, or terminate supervised release on a report and recommendation basis.[15] <u>See</u> 18 U.S.C. § 3401(i). In 1996, the Ninth Circuit, however, examined the expanded grant of authority to magistrate judges in § 3401(i) and reached the same conclusion concerning probation revocation as <u>Banks</u> and <u>Curry</u> had. <u>See</u> <u>Colacurcio</u>, 84 F.3d at 332-34. In <u>Colacurcio</u>, the magistrate judge conducted an evidentiary hearing to determine whether the defendant had violated a condition of probation. <u>Id.</u> at 328. The defendant objected to the district court's delegation of the evidentiary hearing and the magistrate judge's report and recommendation. <u>Id.</u> Nonetheless, the district court adopted the magistrate judge's factual findings without conducting an evidentiary hearing of its own and revoked the defendant's probation. <u>Id.</u> Vacating the district court's revocation order, the Ninth Circuit expressly rejected the argument that, because § 3401(i) authorizes a magistrate judge to conduct evidentiary hearings to "modify, revoke, or terminate supervised release," a magistrate judge could also, under § 3401(i), conduct an evidentiary

---

[15]In 1998, the Sixth Circuit concluded that, in light of § 3401(i), the magistrate judge, even without the defendant's consent, did have authority to conduct an evidentiary hearing concerning the revocation of supervised release, subject to <u>de novo</u> review by the district court. <u>See</u> <u>Waters</u>, 158 F.3d at 938-42.

28

hearing to revoke probation.  Id. at 330-32 (noting, among other reasons, that "[t]he terms 'supervised release' and 'probation' are not interchangeable").  The Ninth Circuit also specifically concluded that the "additional duties" clause does not authorize a magistrate judge to conduct a probation revocation hearing without the defendant's consent when the district court has sentenced the defendant.  Id. at 332-34.  Citing Peretz, the Ninth Circuit stated that even assuming probation revocation hearings could be delegated as "additional duties," it "would still require defendant's consent to eliminate the constitutional problems that arise from having a non-Article III judge preside over a critical stage of a criminal case."  Id. at 333.[16]

For all of these reasons, we conclude that the "additional duties" clause does not permit a district court to delegate to a magistrate judge the evidentiary and fact-

---

[16]The Colacurcio court also stated that "[t]he Supreme Court has suggested that . . . § 636(b)(3) should be construed narrowly."  84 F.3d at 332.  In addition, the Colacurcio court  concluded that another provision of the Federal Magistrates Act, § 636(a)(3), did not authorize the delegation because under a "plain reading" of 18 U.S.C. § 3401, which § 636(a)(3) incorporates, "a magistrate judge has authority to conduct a probation revocation hearing only if the following three conditions are satisfied: (1) defendant's probation was imposed for a misdemeanor; (2) the defendant consented to trial, judgment, and sentence by a magistrate judge; and (3) the defendant initially was sentenced by a magistrate judge," and none of these conditions had been satisfied.  Id. at 329.

finding portion of a sentencing hearing in a felony case on a report and recommendation basis without the defendant's consent.[17]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM all defendants' convictions, but VACATE their sentences in their entirety and REMAND this case for resentencing consistent with this opinion.

---

[17]We need not address the defendants' other challenges to their sentences because harmless error analysis does not apply when a magistrate judge lacks the power to act. See Gomez, 490 U.S. at 876 (rejecting harmless error analysis when magistrate judge unlawfully presided over jury selection in a felony case because "basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside . . . [t]hus harmless-error analysis does not apply"); Thomas, 136 F.3d at 762 (rejecting harmless error analysis when magistrate judge unlawfully presided over jury selection during a civil case in part because "the harm to Appellant . . . flows not from the adequacy or inadequacy of the magistrate judge's handling of the jury selection process, but rather from the fact that Congress did not afford magistrate judges the power to preside over any aspect of the trial of a civil lawsuit without the express consent of the parties").