UNITED STATES of America, Plaintiff-Appellee,

v.

Juliet MARAGH, Defendant-Appellant.

No. 98-4562.

United States Court of Appeals,

Eleventh Circuit.

May 6, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 97-CR-677-DLG),
Donald L. Graham, Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

Defendant Juliet Maragh appeals from a judgment finding her guilty of conspiring to import cocaine

into the United States, in violation of 21 U.S.C. section 963. She properly argues that a magistrate judge may

only conduct voir dire in a felony case with the consent of the defendant. She asserts that she is entitled to

a new trial because the magistrate judge conducted the voir dire in this case. Since the record is not clear

whether Maragh gave her knowing approval to this procedure, we remand for further proceedings so that the

final decision as to whether the defendant is entitled to a new trial may be based on the actual facts of this

case. At the same time, we announce a prospective rule that should eliminate any dispute over this kind of

issue in future trials.

I.      BACKGROUND

On August 7, 1997, agents of the United States Customs Service stopped Karlene Burton at the

Miami International Airport in Miami, Florida, as she disembarked an Air Jamaica flight from Kingston,

Jamaica. After briefly questioning Burton, a customs agent searched Burton's luggage, found several

cosmetic bottles containing cocaine and immediately placed Burton under arrest. Upon further questioning,

Burton stated that her two colleagues, Donna Francis and Maragh, had also smuggled cocaine into the country

that same day on an earlier Air Jamaica flight. Burton also told the agents that Maragh had directed Burton

and Francis to go to a Miami Travelodge hotel after landing and to contact a local purchaser for the smuggled cocaine. Customs agents set up surveillance equipment at the specified Travelodge, but neither Francis nor Maragh ever appeared at the hotel. Thereafter, a customs agent returned to Miami International Airport because Burton had indicated that Francis would fly back to Jamaica the following day, August 8, 1997. When Francis arrived at the airport for her return flight, customs agents arrested her.

Although Francis initially denied any involvement in drug trafficking, she later told the customs agents that she had spent the previous night with Maragh at a Holiday Inn hotel in Miami. Customs agents proceeded to the Holiday Inn that Francis had identified and arrested Maragh for drug smuggling. After initial questioning, the agents transported Maragh to the United States Attorney's Office in Miami, administered her *Miranda* rights (*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), and interrogated her about the drug smuggling operation. Maragh categorically denied any involvement in the drug smuggling operation.

Following their arrests, Burton and Francis revealed how Maragh coordinated their actions during the August 7 drug importation. According to Burton and Francis, Maragh provided the packaged cocaine to them and gave them instructions about where to stay (the Travelodge) and how to contact buyers once within the United States. Specifically, Maragh gave Burton and Francis telephone numbers for a cocaine buyer in the Miami area and a cocaine supplier in Jamaica. Maragh also gave Burton cash to purchase airline tickets for Burton and Francis, and promised them $1,500 each upon completion of the cocaine sales.

Burton and Francis further reported to the customs agents that on August 7, Francis and Maragh arrived in Miami before Burton, who had missed her flight. Maragh then sent Francis to the Travelodge while she remained at the airport, waiting for Burton's arrival. Upon arrival at the Travelodge, Francis arranged for the delivery of the cocaine. While Francis waited for the anticipated exchange, Maragh telephoned her from the airport and instructed her to leave the Travelodge immediately because "something [was] going down." Maragh arrived at the Travelodge shortly thereafter, and both traveled to the Holiday Inn. While at

2

the Holiday Inn, Maragh arranged for and completed the drug transaction. The following day, the customs agents arrested Francis.

## II. PROCEDURAL HISTORY

On September 3, 1997, a grand jury returned a one-count indictment charging Maragh with conspiracy to import cocaine into the United States in violation of 21 U.S.C. section 963. On December 3, 1997, Maragh appeared before a United States magistrate judge to select a jury.

The only things in the record concerning jury selection are (1) the entry that it had been conducted by the magistrate judge, and (2) the transcript of voir dire proceedings before the magistrate judge. We find no order of reference or any indication that the district judge ever addressed the point that a magistrate judge may only conduct voir dire in a felony case with the consent of the defendant.

The sole reference in the transcript of voir dire proceedings before the magistrate judge is the following colloquy:

> THE COURT: This is *USA versus Juliet Maragh.* I am here to select a jury and everybody has agreed to me selecting the jury for Judge Graham. Is that correct?
>
> MR. KALISCH (defendant's trial attorney): Correct.
>
> MR. SENIOR (A.U.S.A.): Yes.

The magistrate judge then proceeded to conduct voir dire and to oversee the lawyers' questioning of the potential jurors. Neither Maragh nor her lawyer objected to the magistrate judge supervising jury selection before the commencement of trial. Following jury selection, Maragh proceeded to trial on December 4, 1997, before a district court judge.

At the end of a three-day trial, the jury found Maragh guilty as charged. On March 13, 1998, the district court sentenced Maragh to 78 months imprisonment, followed with four years of supervised release.

## III. ISSUES

The issues Maragh raises on appeal are: (1) whether there was error in the magistrate judge being allowed to supervise and conduct voir dire and jury selection; and (2) whether the district court abused its

3

discretion in allowing the government to use inadmissible evidence to rebut cross-examination of a government witness.

IV.     DISCUSSION

Because Maragh made no objection to the magistrate judge's conducting of voir dire, we review the district court's delegation of jury selection to the magistrate judge only for plain error. *See United States v. Zapata,* 139 F.3d 1355, 1357 (11th Cir.1998). We review a district court's ruling on admission of evidence under the abuse of discretion standard. *See United States v. Trujillo,* 146 F.3d 838, 843 (11th Cir.1998).

*A.     Voir Dire*

United States Supreme Court precedent and Eleventh Circuit case law are explicit regarding the delegation of voir dire to a magistrate judge. The validity of the magistrate judge's criminal jurisdiction hinges on the construction of 28 U.S.C. section 636, known as the Federal Magistrates Act. Historically, the decision of a district court to delegate certain of its functions, including the conducting of voir dire, to a magistrate judge has been evaluated under the section 636(b)(3) catchall provision that states: "A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. section 636(b)(3) (1993). The Supreme Court's interpretation of section 636(b)(3) establishes the presence or absence of consent as the crucial factor in determining what duties the section encompasses. *See Peretz v. United States,* 501 U.S. 923, 934-36, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991); *see also NLRB v. A-Plus Roofing, Inc.,* 39 F.3d 1410, 1415 (9th Cir.1994).

In 1989, the Supreme Court concluded that a magistrate judge did not have jurisdiction to conduct jury voir dire in a felony trial. *See Gomez v. United States,* 490 U.S. 858, 871-76, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). Two years later, the Supreme Court amended its *Gomez* conclusion, holding that as long as a defendant consented, a magistrate judge rather than an Article III judge could conduct voir dire in a felony case under section 636(b)(3). *See Peretz,* 501 U.S. at 935-36, 111 S.Ct. 2661. "In sum, the structure and purpose of the Federal Magistrates Act convince us that supervision of voir dire in a felony proceeding

4

is an additional duty that may be delegated to a magistrate under 28 U.S.C. section 636(b)(3) [28 U.S.C.S. section 636(b)(3) ] if the litigants consent." *Peretz,* 501 U.S. at 935, 111 S.Ct. 2661. The Supreme Court continued, "[i]f a defendant perceives any threat of injury from the absence of an Article III judge in the jury selection process, he need only decline to consent to the magistrate's supervision to ensure that a judge conduct the voir dire." *Peretz,* 501 U.S. at 935, 111 S.Ct. 2661. As is clear in *Peretz,* consent is of paramount importance in the construction of a district court's authority to delegate to a magistrate judge its duty to conduct voir dire under section 636(b)(3).

If the term "everybody" was understood by both counsel and the magistrate judge to include the clients as well as the attorneys when addressing the question, "[E]verybody has agreed to me selecting the jury for Judge Graham. Is that correct?," then this record reveals almost as much as the record in *Peretz v. United States,* 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), which affirmed a conviction where a magistrate judge conducted the jury selection.

At a pretrial conference in *Peretz,* "[T]he district judge asked if there was '[a]ny objection to picking the jury before a magistrate?' App.2. Petitioner's counsel responded: 'I would love the opportunity.' " *Peretz,* 501 U.S. at 925, 111 S.Ct. 2661. In the case before us the record is silent as to any activity by the district judge regarding jury selection.

The opinion of the Supreme Court goes on to recite these facts:

Immediately before the jury selection commenced, the Magistrate asked for, and received, assurances from counsel for petitioner and from counsel for his codefendant that she had their clients' consent to proceed with the jury selection. [FN2] She then proceeded to conduct the voir dire and to supervise the selection of the jury. Neither defendant asked the District Court to review any ruling made by the Magistrate.

FN2. "THE COURT: Mr. Breitbart, I have the consent of your client to proceed with the jury selection?"

"MR. BREITBART: Yes, your Honor."

"THE COURT: And Mr. Lopez, do I have the consent of your client to proceed?"

"MR. LOPEZ: Yes, your Honor."

5

501 U.S. at 925, 111 S.Ct. 2661.

As in our case, the defendant there "raised no objection to the fact that the Magistrate had conducted voir dire." 501 U.S. at 925, 111 S.Ct. 2661.

It is unclear whether counsel's response to the magistrate judge's question represented the defendant's consent. We remand the case to the district court to develop with trial counsel and government counsel the precise facts concerning whether counsel's answer to the magistrate judge's question was intended to represent that Maragh had consented to the procedure, whether she in fact consented, whether any consent or waiver was informed, and any other information that would enable a court to determine whether the requirements of *Peretz* had been complied with in this case.

If in fact the defendant did not give her informed consent, then a new trial would be in order. If she did, those findings could be certified to this court for further consideration of this appeal.

In order to eliminate in the future the problem which we face today, we hereby announce a prospective rule in our supervisory capacity. The established law is clear: In order for a magistrate judge to conduct jury voir dire in a felony criminal proceeding, a defendant must give consent, or in other words, a defendant must waive the right to have an Article III judge conduct voir dire. The nature and method of gaining that all-important consent is the issue that troubles us today.

Although Maragh's lawyer voiced his consent, no indication exists, in the record or otherwise, that her lawyer ever advised her that her consent was necessary for the magistrate judge to conduct voir dire. The government argues on this appeal that the district court did not err in allowing the magistrate judge to conduct voir dire because counsel consented, and there was no objection from the defendant. We reject the government's argument that under *Peretz,* a magistrate judge may conduct voir dire if counsel consents and the defendant fails to object to the procedure. 501 U.S. at 940, 111 S.Ct. 2661.

In *Peretz,* the specific consent that the Supreme Court approved consisted of (a) trial counsel's agreement to the procedure, (b) trial counsel's representation that the client was aware of and agreed to the

6

procedure, and (c) the lack of any objection from the defendant in the district court. 501 U.S. at 925, 111 S.Ct. 2661.

A case which guides us to adopt a supervisory rule in connection with a magistrate judge conducting voir dire is *Grassi v. United States,* 937 F.2d 578 (11th Cir.1991). In that case, a jury convicted Grassi for violating the Hobbs Act. *Grassi,* 937 F.2d at 579. Prior to trial, the district judge asked the parties if they wished to consent to having a magistrate judge conduct voir dire: "The judge stated that because the action involved a felony, all parties had to consent in order for the magistrate to preside at voir dire." *Grassi,* 937 F.2d at 579. The district judge added "that he would preside should anyone object. Grassi, his counsel, the codefendant, codefendant's counsel, and the government each *expressly consented* to use of the magistrate for voir dire." *Grassi,* 937 F.2d at 579 (emphasis added).

The only issue that Grassi raised on appeal was whether the trial court erred in permitting a magistrate judge to conduct voir dire after all parties had personally consented to such procedure. *Grassi,* 937 F.2d at 579. In holding that the district judge did not err, the *Grassi* panel recognized *Peretz,* and held that "[t]he district judge properly sought and received the *explicit consent* of all parties, both from counsel and from the defendants themselves." *Grassi,* 937 F.2d at 579 (emphasis added). The district judge carefully sought and gained personal and explicit consent from not only Grassi's lawyer, but from Grassi himself, Grassi's codefendants and the government lawyers.

Because voir dire is such an important and critical stage in a criminal proceeding, we now announce a prospective rule which makes explicit what is implicit in *Grassi:* To effectuate appropriate consent when a magistrate judge is delegated the district court's authority to conduct voir dire, the magistrate judge or the district court judge must obtain, on the record, explicit and personal consent from all parties involved, particularly from the defendant. We do not insist that the defendant must be personally addressed by the court, but the record must be such as to clearly show that the defendant has consented personally to the procedure.

7

*B.*     *Evidentiary Question*

Until the voir dire issue has been settled and it has been determined whether the defendant is entitled to a new trial, we will not reach the evidentiary question Maragh raises on appeal. A new trial would eliminate the need for us to address that issue.

V.     CONCLUSION

In sum, we hold that the district court plainly erred in delegating its authority to conduct voir dire to a magistrate judge unless Maragh consented. We remand the case to the district court for further proceedings consistent with this opinion. We hold prospectively, under the supervisory powers of this Court, that henceforth it will be error for a magistrate to conduct voir dire in a felony case unless the record clearly shows that the defendant has knowingly consented to such procedure.

REMANDED FOR FURTHER PROCEEDINGS.

HATCHETT, Chief Judge, dissenting:

I respectfully dissent because I would not remand the case for an evidentiary hearing, but reverse holding that the magistrate judge must obtain the defendant's consent, on the record, before conducting voir dire.