**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

JUSTIN METUCHEN GAMBA,
　　　　　*Defendant-Appellant.*

No. 06-35021

D.C. Nos.
CV-04-00162-DWM
CR-01-00068-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
November 17, 2006—Portland, Oregon

Filed April 11, 2007

Before: Alfred T. Goodwin, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge Fisher

## COUNSEL

Daniel R. Wilson, Measure, Robbin & Wilson, P.C., Kalispell, Montana, for the defendant-appellant.

Joshua S. Van de Wetering, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Justin Metuchen Gamba was convicted and sentenced for witness tampering in violation of 18 U.S.C. § 1512(b). Gamba appeals the district court's denial of his petition for relief filed under 28 U.S.C. § 2255. Specifically, Gamba argues that the district court erred in denying his § 2255 motion because it did not find Gamba's appellate counsel ineffective when he failed to challenge on appeal the magistrate judge's jurisdiction to preside over closing argument without Gamba's personal consent. We affirm because the magistrate judge had proper jurisdiction over closing argument at Gamba's trial. Defense counsel may waive a defendant's right to have an Article III judge conduct closing argument where the decision is one of trial tactics or strategy.

### FACTS AND PROCEDURAL HISTORY

Gamba was charged with two counts of making false statements in violation of 18 U.S.C. § 1001, two counts of witness tampering in violation of 18 U.S.C. § 1812(b), and one count of being an accessory after the fact in violation of 18 U.S.C. § 3. All of Gamba's charges arose from his attempts to foil the prosecution of his girlfriend on drug and gun charges. He pleaded not guilty to all charges and the case was set for jury trial. Gamba retained attorney Ed Sheehy to represent him at trial.

Gamba's trial lasted one day. After testimony concluded, Sheehy, without Gamba being present, and the Assistant United States Attorney, Joshua Van de Wetering, convened in the district court judge's chambers to finalize jury instructions. After the instructions were finalized, Chief District Judge Molloy informed the parties that he had to pick his wife up from the hospital and suggested that the trial reconvene after he returned. The relevant portion of the trial transcript reads as follows:

THE COURT: Let me tell you what the problem is that I've got. I've got to pick my wife up at the hospital at 2:30 and run her home and then come back here. So what I'd like to do, if at all possible—and—shoot, it will be—2:30, make sure you're here at 2:30, because that's when it will be. And it just may delay me a little bit. Do you have any objection?

One thing that I could do is have Judge Erickson sit in on the argument and submit the case to the jury. I mean, I can instruct the jury, but then he would just preside and give it to the jury.

MR. SHEEHY: Yeah, I have no objection to that.

THE COURT: I'll leave it up to you guys and I won't force you, I just have to —

MR. SHEEHY: I understand.

THE COURT: If they did things the way I try and run things, I could go over, pick her up and be back in half hour.

MR. SHEEHY: I understand what you're talking about; I have no problem doing that.

MR. VAN de WETERING:
                    I think that's a great idea.

(Whereupon, the Court picked up the phone and had telephone conversation with Magistrate Judge Erickson's assistant.)

THE COURT: So is that all right with you guys?

MR. SHEEHY: Yeah.

THE COURT: Is that all right with the defendant?

MR. SHEEHY: Yeah, he won't care.

THE COURT: So here's what we're going to do . . . . I'll go in, instruct the jury, you get on your opening, you on yours and, hopefully, we can get it done. But if we're running out of time at 2:30, I'll take a break and then ask Judge Erickson to come in and just sit there for the balance of the argument and submit the instructions and Mary will swear in the bailiff and then send them off.

Shortly thereafter, the trial reconvened in the courtroom *with Gamba and the jury present*. Judge Molloy addressed the jury:

THE COURT: I am going to have to leave at 2:30 because my wife had a medical

> procedure and I have to pick her up. So Judge Erickson, who is the magistrate judge, will come in and preside over the arguments of counsel in this case. They'll start while I'm here, but we may take a real short break so that I can step off and he can come in. *The parties have consented to that.*

(Emphasis added). Neither Gamba nor his counsel raised any objection to Judge's Molloy's announcement.

Judge Molloy exited the courtroom after instructing the jury and after counsel for the government had begun his closing argument. Magistrate Judge Erickson took the bench. Neither Gamba nor his counsel objected to the presence of Magistrate Judge Erickson, who made no comments or rulings during the time he presided over the closing arguments. At the conclusion of closing argument, Magistrate Judge Erickson submitted the case to the jury. The jury found Gamba guilty of witness tampering in violation of 18 U.S.C. § 1812(b) and Gamba was later sentenced to thirty-three months imprisonment. Gamba did not object to the magistrate judge's presiding over closing argument after the jury handed down its verdict or when he was sentenced by the district court.

Gamba's petition for relief under 28 U.S.C. § 2255 comes after this court denied his first appeal for insufficiency of evidence. *See United States v. Gamba*, 76 F. App'x. 209 (9th Cir. 2003). The district court denied Gamba's § 2255 motion on the grounds that Gamba's counsel did not render ineffective counsel by consenting to the magistrate judge presiding over closing argument or by failing to raise the magistrate judge consent issue on appeal, but granted Gamba a certificate of appealability on the magistrate jurisdiction issue pursuant to 28 U.S.C. § 2253(c).

## JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. §§ 2253 and 2255.

## STANDARD OF REVIEW

Whether the district court's delegation of authority to a magistrate judge to preside over closing argument is proper under the Federal Magistrates Act is a question of law subject to *de novo* review. *United States v. Colacurcio*, 84 F.3d 326, 328 (9th Cir. 1996). The district court's denial of a 28 U.S.C. § 2255 motion is also subject to *de novo* review. *United States v. Ware*, 416 F.3d 1118, 1120 (9th Cir. 2005).

## DISCUSSION

[1] The issue before us is one of first impression in this circuit. Specifically, we address whether a district court judge may lawfully appoint a magistrate judge to preside over closing argument at a felony criminal trial if the defendant's counsel has, for trial tactic or legal strategy purposes, agreed to such appointment.[1]

[2] "The Federal Magistrates Act, 28 U.S.C. §§ 631-39, governs the jurisdiction and authority of federal magistrates." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1118 (9th Cir. 2003) (en banc). The Act allows the district court to assign magistrate judges certain enumerated duties, as well as any

---

[1]While we have examined issues involving consent and magistrate jurisdiction, we have never specifically addressed the question posed in this appeal. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003) (en banc) (holding a magistrate judge may conduct plea colloquies pursuant to Federal Rule of Criminal Procedure 11 if defendant consents); *United States v. Sanchez-Sanchez*, 333 F.3d 1065, 1067 (9th Cir. 2003) (finding the magistrate judge lacked authority to conduct a revocation proceeding because neither defendant nor his counsel consented to allowing the magistrate judge to preside).

"additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

The Supreme Court initially examined the scope of the "additional duties" provision of the Act in *Gomez v. United States*, 490 U.S. 858 (1989), in the context of whether a magistrate judge had jurisdiction to preside over voir dire in a felony trial. In *Gomez*, the Court determined the magistrate judge had exceeded his jurisdiction by conducting voir dire in a felony trial over the defendant's objection. *Id.* at 876. Because the Court found no reference to jury selection in the Federal Magistrates Act or its legislative history, it determined Congress did not intend to include jury selection within the § 636(b)(3) "additional duties" provision. *Id.* at 871-76.

Two years later, faced with a conflict among the circuits in interpreting *Gomez* and applying the § 636(b)(3) catch-all "additional duties" provision, the Court decided *Peretz v. United States*, 501 U.S. 923 (1991). Because the dissent relies on what we respectfully take to be a misreading of *Peretz*, we review its facts and holding at some length.

In *Peretz*, the facts were as follows:

> At a pretrial conference attended by both petitioner and his counsel, the District Judge asked if there was "[a]ny objection to picking the jury before a magistrate?" Petitioner's counsel responded: "I would love the opportunity." Immediately before the jury selection commenced, the Magistrate asked for, and received, assurances from counsel for petitioner and from counsel for his codefendant that she had their clients' consent to proceed with the jury selection. She then proceeded to conduct the *voir dire* and to supervise the selection of the jury. Neither defendant asked the District Court to review any ruling made by the Magistrate. . . . In the District Court, peti-

tioner raised no objection to the fact that the Magis-
trate had conducted the *voir dire*.

*Id.* at 925 (citations omitted).

On appeal from his conviction to the Second Circuit Court
of Appeals, Peretz contended that the lower court had erred
in assigning jury selection to the magistrate and that the
Court's decision in *Gomez* required reversal. The Court of
Appeals disagreed, citing its earlier decision in *United States
v. Musacchia*, 900 F. 2d 493 (2d Cir. 1990), in which "the
Second Circuit had affirmed a conviction in a case in which
the defendant had not objected to jury selection by the Magis-
trate." *Id.* at 926. In order to illustrate the conflict among the
circuits, the Supreme Court then quoted approvingly and at
length from the Second Circuit's *Musacchia* opinion:

> Appellants additionally claim that *Gomez* states that
> a magistrate is without jurisdiction under the Federal
> Magistrates Act to conduct *voir dire*. We disagree.
> Since *Gomez* was decided we and other circuits have
> focused on the 'without defendant's consent' lan-
> guage and *generally ruled that where there is either
> consent or a failure to object a magistrate may con-
> duct the jury voir dire in a felony case*. See [*United
> States v. Vanwort*, 857 F. 2d 375, 382-383 (2d Cir.
> 1989), *cert. denied sub nom. Chaptoteau v. United
> States*, 495 U.S. 906 (1990); *United States v. Mang
> Sun Wong*, 884 F. 2d 1537, 1544 (2d Cir. 1989),
> *cert. denied*, 493 U.S. 1082 (1990); *United States v.
> Lopez-Pena*, 915 F.2d 1542, 1545-1548 (1st Cir.
> 1989)] (not plain error to permit magistrate to pre-
> side since objection to magistrate must be raised or
> waived); *Government of the Virgin Islands v. Wil-
> liams*, 892 F.2d 305, 310 (3d Cir. 1989) (absent
> demand    no    constitutional    difficulty    under
> § 636(b)(3) with delegating jury selection to magis-
> trate); *United States v. Ford*, 824 F. 2d 1430, 1438-

39 (5th Cir. 1987) (en banc) (harmless error for magistrate to conduct *voir dire* where defendant failed to object), *cert denied*, 484 U.S. 1034 (1988); *United States v. Wey*, 895 F.2d 429 (7th Cir. 1990) (jury selection by magistrate is not plain error where no prejudice is shown).

*Id*. (emphasis added).

After noting that the holding in *Gomez* was "carefully limited to the situation in which the parties had not acquiesced at trial to the magistrate's role" and had divided the Courts of Appeals, the Court commented that "[o]n the other hand, those courts had uniformly rejected challenges to a magistrate's authority to conduct the *voir dire* when no objection to his performance of the duty had been raised in the trial court." *Id.* at 928.

After extolling the now essential role played by magistrate judges in helping district court judges handle their "bloated dockets," *id*. at 928, and concluding that with the defendant's consent the constitutional analysis is successfully negotiated, it noted:

> The generality of the category of "additional duties" indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen. If Congress had intended strictly to limit these additional duties to functions considered in the committee hearings or debates, presumably it would have included in the statute a bill of particulars rather than a broad residuary clause. Construing this residuary clause absent concerns about raising a constitutional issue or depriving a defendant of an important right, we should not foreclose constructive experiments that are acceptable to all participants in the trial pro-

cess and are consistent with the basic purposes of the statute.

*Id.* at 932-33.

The Court next dealt with the issue of waiver in the context of magistrate jurisdiction.

> "We have previously held that litigants may waive their personal right to have an Article III judge preside over a civil trial. The most basic rights of criminal defendants are similarly subject to waiver. Just as the Constitution affords no protection to a defendant who waives these fundamental rights, so it gives no assistance to a defendant who fails to demand the presence of an Article III judge at the selection of his jury."

*Id.* at 936-37 (citations omitted).

**[3]** The Court also found additional protections to defendants by virtue of the fact that "[t]he ultimate decision whether to invoke the magistrate's assistance is made by the district court, subject to veto by the parties." *Id*. at 937. Furthermore, "[b]ecause the entire process takes place under the district court's total control and jurisdiction, there is no danger that use of the magistrate involves a congressional attemp[t] to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating constitutional courts." *Id*. (internal citations and quotation marks omitted). Finally, the Court held "that permitting a magistrate to conduct the *voir dire* in a felony trial when the defendant raises no objection is entirely faithful to the congressional purpose in enacting and amending the Federal Magistrates Act." *Id.* at 940.

**[4]** Following the Supreme Court's focus on the defendant's consent in *Peretz*, this court articulated a two-pronged test to determine whether a duty, not specified in the Act, may

be delegated to a magistrate judge under the catch-all "additional duty" provision, § 636(b)(3). *Reyna-Tapia*, 328 F.3d at 1119. We determined that whether a duty designated to a magistrate judge falls under § 636(b)(3) "depends, first and foremost, on whether the parties have consented, and secondly, on whether the additional duties bear some relation to the specified duties that magistrate judges can perform." *Id.* (citation and internal quotation marks omitted).

## A. Consent

The central issue before this panel is the degree to which a defendant himself must be involved in the decision to allow a magistrate judge to preside over closing argument. Because Sheehy's decision to consent to Magistrate Judge Erickson presiding over Gamba's closing argument was a technical and strategic legal decision, we hold it is a decision that an attorney may properly make on a defendant's behalf.

[5] Numerous courts have held that defense counsel may waive constitutional rights of the accused as part of the trial strategy or tactics. In *Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir. 1965), *cert. denied*, 383 U.S. 919 (1965), for example, we determined that counsel may waive the accused's Sixth Amendment right to cross-examination and confrontation as a matter of trial tactics or strategy. There, defense counsel stipulated that a matter could be heard on the transcript of the preliminary hearing, though each side retained the right to produce additional evidence at trial. *Id.* at 287. We found that this decision was "deliberately made as a matter of trial tactics and strategy" because the accused was charged with assault with a deadly weapon, and the transcript of the witness testimony was "far more innocuous than the appearance of that witness before the state judge could ever have been." *Id.* at 287-88 & n.8. We concluded that in this instance the defendant's "right to cross examine and confront prosecution witnesses was effectively waived by his counsel." *Id.* at 288; *see also United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999)

("We therefore join the majority of circuit courts of appeals and hold that defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound.").

**[6]** Just as defense counsel made a tactical decision to waive his client's Sixth Amendment right to cross-examination and confrontation in *Wilson v. Gray*, Sheehy's decision to consent to Magistrate Judge Erickson presiding over Gamba's closing argument (to which Gamba made no objection when the agreement was announced in open court) was also a strategic choice. As Sheehy explained in a letter to Gamba, "if we had objected to Judge Erickson coming in and listening to the closing arguments, rather than Judge Molloy, Judge Molloy would have simply delayed the closing argument and I did not see the merit in doing that." Based on the record before this court, it appears that Sheehy understood the nuances of the case, observed the jury, and made a strategic decision that a continuance would disadvantage his client. This is precisely the type of tactical decision that counsel is retained to provide. See Gideon v. Wainwright, 372 U.S. 335, 345 (1963) (emphasizing the importance of the knowledge and skill counsel brings to bear when representing a defendant in a criminal trial).

**[7]** Moreover, the Supreme Court in *Florida v. Nixon*, 543 U.S. 175 (2004), explained that:

> An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. *That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision.* But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has the ultimate authority to determine whether to plead guilty,

waive a jury, testify in his or her own behalf, or take an appeal. Concerning those decisions, an attorney must both consult the defendant and obtain consent to the recommended course of action.

*Id*. at 187 (internal citations and quotation marks omitted) (emphasis added). Although the Court did not provide an exhaustive list of "basic trial rights," the Court did not list the right to an Article III judge presiding over closing argument as one of those rights, and it cannot reasonably be said that such a "right"— if there is one at all— rises to the level of such basic and fundamental rights as deciding whether to plead guilty or appeal one's conviction, particularly in light of *Peretz*. Thus, Gamba's consent was not necessary for Sheehy to agree to Magistrate Judge Erickson presiding over closing argument.

Despite the fact that Sheehy made an appropriate tactical decision, the dissent interprets *Peretz* to require a defendant's knowing, informed, and personal consent to a magistrate judge's jurisdiction. Dissent at 4103; *see also United States v. Maragh*, 174 F.3d 1202,1206 (11th Cir. 1999) (remanding the case to the district court for an evidentiary hearing on whether the defendant personally consented to a magistrate judge conducting voir dire in a felony criminal proceeding). The dissent extrapolates this rule from two facts in *Peretz*: (1) the defendant and his counsel both attended the pre-trial conference where the counsel consented to the magistrate judge's jurisdiction, and (2) in response to the magistrate's question, counsel indicated she had defendant's consent to proceed with jury selection. Dissent at 4104-4105 (citing *Peretz*, 501 U.S. at 925).[2] However, there is no express indication in *Peretz* that the defendant ever *personally* consented to the magistrate's pres-

---

[2]Arguably, Gamba's presence in court when Judge Molloy announced the agreement of the parties that the magistrate judge would preside over closing argument in his absence is comparable to Peretz's presence in the pre-trial conference.

ence, or that the Court requires that such consent to be personally given. *Peretz*, 501 U.S. at 936 n.2 (explaining the defense counsel's duty to weigh the costs and benefits of a magistrate judge's supervision of *voir dire*). Moreover, despite Justice Marshall's dissent in *Peretz*, the Court declined to extend the express consent requirement found in 18 U.S.C. § 3401(b), which requires a defendant charged with a misdemeanor to expressly consent to be tried before a magistrate judge, to apply to a magistrate judge's ability to perform "additional duties" under § 636(b)(3). *See Peretz*, 501 U.S. at 947 n.6 (Marshall, J., dissenting) (arguing that the written and express consent requirements found in 18 U.S.C. § 3401 should have been applied to the § 636(b)(3) additional duties provision). We do not know, as suggested by the dissent, whether the *Peretz* court "contemplated" that defendant's consent must be personal, but it by no means required it.[3] Dissent at 4106.

The dissent also argues that because the magistrate judge lacks familiarity with the proceeding, allowing him to preside over closing argument risks "a fractured judicial approach and rulings inconsistent with prior proceedings." Dissent at 4109. This proposition actually reinforces our argument that such a decision is necessarily strategic and technical in nature, and, therefore, best made by an attorney. Few defendants have the training to permit them to appreciate the various legal concerns at issue when a magistrate judge is delegated authority to preside over closing argument. Because an attorney understands the importance of consistency in a trial proceeding, he is best equipped to make an immediate determination as to the risks or benefits of accepting a magistrate judge as a substitute for a district court judge. Attorney Sheehy's decision to allow

---

[3]The Supreme Court is habitually clear when a defendant's personal and informed consent is required to waive a constitutional right. *See, e.g.*, *Boykin v. Alabama*, 395 U.S. 238, 241-43 (1969) (explaining that a guilty plea and the waiver of right to counsel must be made "knowingly" and "intelligently" by the defendant). Notably, the Court did not include such language in *Peretz*.

a magistrate judge to preside over closing argument in Gamba's trial was a strategic, technical legal decision and Gamba's personal consent was not required.[4]

Even if the dissent were correct and we were to hold that Gamba's personal, knowing consent to the magistrate presiding over the closing arguments in his trial was required, he has waived his right to object to Magistrate Judge Erickson's presence by failing to raise his objection when Judge Molloy announced the agreement of the parties, at the time of the jury verdict, at sentencing or in his first appeal. Under *Peretz*, Gamba's failure to object clothed the magistrate with authority to preside over the closing arguments.

## B. Additional Duties

In addition to finding the required consent, we must determine whether closing argument "bear[s] some relation to the specified duties" that magistrate judges are already authorized to perform. *Peretz*, 501 U.S. at 930. We hold that it does.

**[8]** In *Peretz*, the Court found that the Act's "additional duties clause permits a magistrate to supervise jury selection in a felony trial provided the parties consent." *Id*. at 933 (internal quotation marks omitted). The Court reasoned that the responsibility and importance of presiding over voir dire at a felony trial are comparable to the duties and responsibility that magistrate judges have in supervising entire civil and misdemeanor trials. *Id*.; *see also* 28 U.S.C. § 636(a) (with the parties' consent, a district court judge may delegate the supervision of entire civil and misdemeanor trials to a magistrate

---

[4]In *Peretz*, the Court also found that "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence." *Peretz*, 501 U.S. at 936. Therefore, even if Gamba's counsel had not consented to Magistrate Judge Erickson's supervision of closing argument, any failure to object to Judge Molloy's absence would have been deemed a waiver of Gamba's right to an Article III judge at critical stages of a felony criminal proceeding.

judge). The *Peretz* Court, as noted above, also encouraged the district courts to experiment in the use of magistrates to carry out functions not previously considered so long as the parties consent or the defendant fails to object.

**[9]** The reasoning the Court applied in *Peretz* equally extends to closing argument. If a magistrate judge can conduct jury selection, then, logically, he can preside over closing argument as well. A magistrate judge who conducts a civil or misdemeanor trial necessarily must preside over closing argument. Closing argument clearly bears a relation to specified duties magistrate judges are statutorily authorized to perform. Accordingly, where defense counsel consents to proceed before a magistrate judge for tactical or strategic reasons, there is neither a constitutional nor a statutory impediment to delegating closing argument in criminal cases to magistrate judges. *See Reyna-Tapia*, 328 F.3d at 1121.

## C.   Ineffective Assistance of Counsel

Since we hold that the magistrate judge had jurisdiction in this case because of defense counsel's consent due to trial strategy or tactics and the close relationship between presiding over closing argument and a magistrate judge's statutorily specified duties, Sheehy's conduct was not objectively unreasonable and Gamba cannot make the necessary showing of prejudice to show ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).

## CONCLUSION

We affirm the district court's denial of Gamba's 28 U.S.C. § 2255 motion. Where the decision is one of trial tactics or legal strategy, defense counsel may waive the defendant's right to have an Article III judge preside over closing argument without the defendant's personal, informed consent.

AFFIRMED.

FISHER, Circuit Judge, dissenting:

I do not quarrel with the majority's conclusion that the district court had the authority to delegate to the magistrate judge the responsibility for presiding over the closing argument. Nor do I fault the district court for proposing to utilize the services of the magistrate judge under the circumstances here. But I do disagree that such a delegation of jurisdiction at this critical stage of the proceedings was proper without obtaining the knowing and informed consent (or acquiescence) of the defendant himself, not simply by way of a unilateral "tactical" decision by his attorney. *See United States v. Maragh*, 174 F.3d 1202, 1206 (11th Cir. 1999). In that respect, I respectfully dissent.

I.

In *Gomez v. United States*, 490 U.S. 858 (1989), the Supreme Court held that where the defendant had timely objected to the magistrate judge conducting voir dire, the "additional duties" a federal judge may assign to a magistrate judge under the Federal Magistrates Act (FMA) do not include the selection of a jury in a felony trial. *Id*. at 860, 871-72. In *Peretz v. United States*, 501 U.S. 923 (1991), the Court reaffirmed *Gomez* but held that "the defendant's consent warrants a different result." *Id.* at 925. The question now before us is what constitutes the crucial "defendant's consent."

The majority and I agree that presiding over closing arguments at a felony trial is a critical stage of the proceedings. *See Peretz*, 501 U.S. at 923 (stating that "those specified duties [in the Federal Magistrate Act] that were comparable to jury selection in a felony trial could be performed only with the consent of the litigants"); *see also United States v. Gomez-Lepe*, 207 F.3d 623, 629 (9th Cir. 2000) (holding that conducting a jury poll that calls into question the jury's unanimity is a critical stage of a criminal proceeding due to the possibility the presiding judge will need to exercise discretion).

We also agree that Gamba had to consent to the magistrate judge substituting for the district judge, but the majority is content to rely solely on defendant's trial counsel's consent. I acknowledge that *Peretz* is not entirely clear as to how the defendant's consent must be established. But, like the Eleventh Circuit in *Maragh*, I read the Supreme Court as requiring some evidence that the defendant has personally and knowingly agreed to the substitution of a magistrate judge for an Article III judge — evidence that is lacking here.

*Peretz* made clear that "the litigants' consent makes the crucial difference" when "constru[ing] the additional duties clause to include responsibilities of far greater importance than the specified duties assigned to magistrates." *Peretz*, 501 U.S. at 933. In doing so, the Court noted that the defendant's due process right to have an Article III judge preside over the critical stages of his felony trial is an underlying concern when interpreting the "additional duties" proviso of the FMA. *See id.* at 932-33. Congress specifically limited assignments to "such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). In interpreting the FMA, therefore, it is "settled policy to avoid an interpretation . . . that engenders constitutional issues." *Peretz*, 501 U.S. at 929 (quoting *Gomez*, 490 U.S. at 864). This framework controls our assessment of whether the "crucial" element of defendant's consent to the magistrate judge's jurisdiction has been established.

Whatever ambiguity may exist in *Peretz*, the Supreme Court has never endorsed the legitimizing force of consent to a magistrate judge's jurisdiction on a record so devoid of any indication that the defendant himself understood and knowingly waived his right to have a "person with jurisdiction to preside" over all critical stages of his felony trial. *Gomez*, 490 U.S. at 876. In *Peretz*, the Court noted that "*both* petitioner and his counsel" attended the pre-trial conference at which the counsel consented to the magistrate judge's jurisdiction and that the magistrate judge thereafter specifically asked counsel

whether she had the "*clients*' consent to proceed with the jury selection." 501 U.S. at 925 (emphasis added). The Court did not specify whether the petitioner's presence and failure to object were necessary components of his consent, but the Eleventh Circuit has understood them as such. *See Maragh*, 174 F.3d at 1206. *Maragh* noted that "[i]n *Peretz*, the specific consent that the Supreme Court approved consisted of (a) trial counsel's agreement to the procedure, (b) trial counsel's representation that the client was aware of and agreed to the procedure, and (c) the lack of any objection from the defendant in the district court." *Id. Maragh* is buttressed by *Peretz*'s suggestion that the defendant, not just his attorney, must agree to a magistrate judge: " 'If a *criminal defendant, together with his attorney*, believes that the presence of a judge best serves his interests during the selection of the jury, then *Gomez* preserves his right to object to the use of a magistrate.' " *Peretz*, 501 U.S. at 935 (quoting *Government of the Virgin Islands v. Williams*, 892 F.2d 305, 311 (3d Cir. 1989)) (emphasis added).

Here, neither the district judge nor the magistrate judge ever asked for or received consent in the presence of the defendant. The colloquy from the pretrial conference quoted by the majority makes clear that Gamba was not aware of, much less necessarily in agreement with, his attorney's consent to the plan to allow the magistrate judge to preside over part of closing arguments. Gamba was not present at this conference — at which the idea of the magistrate judge's participation was proposed for the first time — and when the district judge asked Gamba's attorney if his client "was all right" with the plan, the attorney simply replied, "Yeah, he won't care." The judge did not seek consent at any other time, but stated in court only that "the parties ha[d] consented" to the magistrate judge's role during closing arguments. The district court later concluded that Gamba's attorney "fail[ed] to obtain [Gamba's] personal consent to allow Judge Erickson to preside over closing arguments" and "fail[ed] to inform Gamba of his right to personally give or withhold consent to the mag-

istrate's jurisdiction." As the district court found, "Gamba was presented with the magistrate's jurisdiction as a *fait accompli*." Thus, it is clear that Gamba did not know of his right to refuse the magistrate judge's jurisdiction and that Gamba had no opportunity to "decline to consent to the magistrate's supervision" had he "perceive[d] any threat of injury from the absence of an Article III judge" at closing argument. *Peretz*, 501 U.S. at 935.

I disagree with the majority that Gamba's right to refuse to consent to a magistrate judge's jurisdiction is one that his attorney may waive "as a matter of trial tactics or strategy." Majority Op. at 4097 (citing *Wilson v. Gray*, 345 F.2d 282, 288-89 (9th Cir. 1965)). Indeed, its dictum that "*even if Gamba's counsel had not consented* to Magistrate Judge Erickson's supervision of closing argument, any failure to object to Judge Molloy's absence would have been deemed a waiver of Gamba's right to an Article III judge at critical stages of a felony criminal proceeding," Maj. Op. at 4101 n.4 (emphasis added), is startling. This extension of *Peretz*, which went to great lengths to explain why a defendant's *consent* was "crucial," *Peretz*, 501 U.S. at 933-35, is both inconsistent with the Court's concern that there be some manifestation of consent and trivializes the nature and import of having an Article III judge preside over the critical phases of a felony trial.

First, *Peretz*'s reference to the right of "a criminal defendant, together with his attorney" to object to the use of a magistrate judge suggests that the Court contemplated that the defendant would personally participate in the decision to waive his right to an Article III judge. *See Peretz*, 501 U.S. at 935. After all, it is "the defendant's consent [that] significantly changes the constitutional analysis" — legitimizing the delegation because "there is no Article III problem when a district court judge permits a magistrate [to preside] *in accordance with the defendant's consent*." *Id.* at 932 (emphasis

added).[1] The majority invokes an attorney's greater "understand[ing of] the importance of consistency in a trial proceeding" and ability to "make an immediate determination as to the risks or benefits of accepting a magistrate judge as a substitute for a district court judge." Maj. Op. at 4100. The majority is undoubtedly correct that an attorney will be "best equipped" to understand the "legal concerns at issue," but such is the case in all legal decisions that we reserve to the defendant personally. *Id.* That a lawyer may have a better grasp of the risks and benefits of a bench trial rather than a jury trial does not mean that we allow attorneys to waive their client's right to the former.[2] Nor is the decision regarding consent to a magistrate judge's jurisdiction "immediate" in the sense of some trial decisions, *id.*, such as objections during witness testimony that must be made or waived. A district court must plan for the magistrate judge's substitution and

---

[1]The Court did note that some of "[t]he most basic rights of criminal defendants are . . . subject to waiver," citing numerous cases in which a defendant's failure to object constituted a waiver of the right at issue. *Peretz*, 501 U.S. at 936-37. Some of these failures — such as not objecting on Fourth or Fifth Amendment grounds — were obviously attributable to the defendants' lawyers rather than the defendants themselves. However, the Court was invoking these cases to illustrate that the right to an Article III judge at a critical stage of a criminal trial is *subject* to waiver if the defendant consents, not to resolve the nature of that consent in all cases. Significantly, unlike instances in which a court is obliged to address an issue only if raised, here delegation to the magistrate judge required the district court *affirmatively* to obtain the defendant's consent. Thus, the most I would infer from the Court's waiver discussion is that the defendant may *knowingly* acquiesce — which was not the circumstance here.

[2]I have more faith than the majority that even an unsophisticated defendant can grasp the distinction between appearing before the same person throughout his trial and appearing before a different person at different stages of the trial. It does not take a law degree or litigation experience to realize that there may be some risks and benefits to consenting to a lower-level judicial officer; even students know the difference between the regular teacher and the substitute. Our fine magistrate judges may well provide the same quality of trial administration more expeditiously than our overworked district judges, but that does not mean that we should allow a defendant's attorney *unilaterally* to opt for the former.

affirmatively obtain the litigants' consent — probably during a conference, as was the case here and in *Peretz*.

Second, in construing the "additional duties" clause, we must not forget that "federal magistrates are creatures of statute, and so is their jurisdiction." *N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994). The explicit, personal consent that Congress requires for a magistrate judge to assume jurisdiction over even misdemeanor trials counsels against the majority's position. The Federal Magistrates Act incorporates 18 U.S.C. § 3401(b)'s provision that:

> Any person charged with a misdemeanor, other than a petty offense may elect, however, to be tried before a district judge for the district in which the offense was committed. The magistrate judge shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a district judge and that he may have a right to trial by jury before a district judge or magistrate judge. *The magistrate judge may not proceed to try the case unless the defendant, after such explanation, expressly consents to be tried before the magistrate judge* and expressly and specifically waives trial, judgment, and sentencing by a district judge. Any such consent and waiver shall be made in writing or orally on the record.

*See* 28 U.S.C. § 636(a)(3) (incorporating 18 U.S.C. § 3401 by reference) (emphasis added). The Supreme Court did not extend § 3401's specific consent requirements to a magistrate judge's assumption of jurisdiction over felony trial voir dire. *See Peretz*, 501 U.S. at 947 n.6 (Marshall, J., dissenting) (arguing that the written consent requirements of § 3401 should be adopted). But neither did it endorse a finding of consent where it is clear that the defendant had neither the knowledge nor the opportunity to object. Defense counsel in *Peretz* was twice asked for, and twice gave, consent to the magistrate judge's jurisdiction — at least once in the presence

of the defendant himself. *See Peretz*, 501 U.S. at 925. Thus, Peretz was on notice that he could have objected to the magistrate judge's jurisdiction had he decided to do so.

Third, because closing argument is a critical stage of trial, it is important not to undermine *Peretz*'s consent requirement. When a magistrate judge presides over *only* a discrete portion of the trial — particularly closing arguments — there is the danger that the defendant will suffer from a fractured judicial approach and rulings inconsistent with prior proceedings. For example, objections during closing arguments, such as whether the government improperly argued facts not in evidence, would be difficult to adjudicate fairly without exposure to the entire trial. The importance of consistency and the presiding judge's familiarity with the proceedings as a whole is underscored by Federal Rule of Criminal Procedure 25(a)(2), which requires that an Article III judge who takes over for another Article III judge once trial has begun but before a verdict is rendered must "certif[y] familiarity with the trial record." If the assumption of jurisdiction by an Article III judge requires such certification, the assumption of jurisdiction by an Article I judge — which is unaccompanied by any such certification — should at least be plainly consented to by the defendant.

Finally, the pressure that an attorney might feel to accommodate the judge's schedule cuts against eliminating a defendant's right to personally consent to or refuse a magistrate judge's jurisdiction over a critical stage of his trial. Although there is no hint here that Chief Judge Molloy exerted any pressure on the attorneys to acquiesce, we should be careful not to eliminate possible checks on the inherent desire to stay in a judge's good graces by consenting where the defendant himself — if asked — might not.

For the foregoing reasons, I would hold that Gamba did not give the requisite consent to the magistrate judge's jurisdiction during closing arguments of his trial.

## II.

Given my view that there was no effective consent to the magistrate judge's jurisdiction, the next question is whether this error requires reversal. It is tempting to conclude that we may apply harmless error analysis to what I believe was error here. The Supreme Court in *Gomez* held, however, that "harmless-error analysis does not apply in a felony case in which, despite the defendant's objection and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury." *Gomez*, 490 U.S. at 876. There are key differences between voir dire and closing arguments — differences that arguably make harmless error analysis more appropriate in connection with the latter. A primary purpose of voir dire is to ferret out bias, *see Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981), and removing the district judge from supervising that process could compromise in untraceable ways an important check on assuring an impartial jury if the process is flawed, *see Gomez*, 490 U.S. at 876. The potential for such hard-to-establish prejudice is much less during closing arguments, and indeed we routinely review errors during closing argument for harmlessness. *See, e.g., Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006) (holding that "prosecutor's inappropriate comments" during closing arguments regarding defendant's refusal to testify were harmless because they "were isolated statements, and . . . minimal in comparison with the weight of the evidence presented"); *United States v. Marcucci*, 299 F.3d 1156, 1158 (9th Cir. 2002) (reviewing a prosecutor's allegedly inflammatory statement during closing argument under the harmless error standard). Here, there is no allegation that the magistrate judge's participation caused any specific prejudice. No objections were raised during closing arguments, and the magistrate judge was not called upon to make any rulings. There is no indication that the magistrate judge interacted with the jury in any way that could have affected its impartiality.

Notwithstanding the practical appeal of applying harmless error analysis to the magistrate judge's improperly assumed

jurisdiction here, this route appears to be foreclosed by the Supreme Court's analysis in *Gomez*:

> Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury. Equally basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside.

490 U.S. at 876 (citations and internal quotation marks omitted). Thus the Supreme Court has explicitly linked the right to have a person with jurisdiction to preside to the right to an impartial adjudicator and clearly indicated that neither right can ever "be treated as harmless." *Id.* To be sure, in *Peretz*, the Court concluded that there was no structural error in the magistrate judge's assumption of jurisdiction, *see Peretz*, 501 U.S. at 937, suggesting that its earlier statement in *Gomez* may have been overly broad. However, the Court did not explicitly overrule this aspect of *Gomez*, and therefore we are still bound by it. *See United States v. Weiland*, 420 F.3d 1062, 1080 n.16 (9th Cir. 2005) ("[W]e are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court.").

Accordingly, I would reverse Gamba's conviction and remand for a new trial. I agree with Gamba that he suffered ineffective assistance of counsel in his unsuccessful appeal. Gamba's first appellate lawyer — who also served as his trial counsel — "ignored issues [that] are clearly stronger than those presented," so "the presumption of effective assistance of counsel [is] overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Because the district court's error was not harmless, Gamba has also demonstrated prejudice, thus satisfying "both prongs of the *Strickland* test," as he is required to do in order to prevail in this collateral attack on his conviction. *Id.* at 289.

For the foregoing reasons, I would decline to create a split in authority with the Eleventh Circuit and I respectfully dissent.